IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| USOR SITE PRP GROUP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-cv-02441 |
| | § | |
| A&M CONTRACTORS, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT CITY OF PASADENA, TEXAS**

Plaintiff USOR Site PRP Group ("Plaintiff" or "USOR Site PRP Group"), by and through counsel and pursuant to Federal Rule of Civil Procedure 56, respectfully moves for partial summary judgment as to the City of Pasadena's liability under CERCLA and the TSWDA, with allocation of the City of Pasadena's equitable share of response costs to be determined at a later date.

Dated:   July 20, 2015

Respectfully submitted,

Gary D. Justis      S.D. TX ID 2375637
Rachel D. Guthrie S.D. TX ID 2423279
THE JUSTIS LAW FIRM LLC
10955 Lowell Ave.
Suite 520
Overland Park, KS 66210-2336
Telephone: (913) 955-3710
Facsimile:  (913) 955-3711
Email: gjustis@justislawfirm.com
Email: rguthrie@justislawfirm.com

ATTORNEYS FOR PLAINTIFF USOR SITE
PRP GROUP

**TABLE OF CONTENTS**

NATURE AND STAGE OF PROCEEDINGS ............................................................................ 1

SUMMARY OF ISSUES AND ARGUMENT ......................................................................... 2

STATEMENT OF MATERIAL FACTS ................................................................................ 2

STANDARD OF REVIEW ................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

    I.   The USOR Site PRP Group Is Entitled to Judgment as a Matter of Law
        on the City of Pasadena's Liability Under CERCLA ....................................... 7

    II.  The USOR Site PRP Group Is Entitled to Judgment as a Matter of Law
        on the City of Pasadena's Liability under the TSWDA................................... 12

    III. The Court can Determine Liability now and Allocate the City of
        Pasadena's Equitable Share of Response Costs later..................................... 16

CONCLUSION.................................................................................................................. 17

## TABLE OF AUTHORITIES

### CASES

*Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664 (5th Cir. 1989) ...................................... 8, 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................... 7

*Asarco LLC v. Cemex, Inc.*, 21 F. Supp. 3d 784 (W.D. Tex. 2014) ......................... 8, 12

*Celanese Corp., v. Coastal Water Auth.*, No. H-06-2265, 2008 WL
    2697321 (S.D. Tex. July 2, 2008) ................................................................. 13, 16

*Corsair v. Stapp Towing Co., Inc.*, 228 F. Supp. 2d 795 (S.D. Tex. 2002) .................... 7

*GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433 (6th Cir. 2004) cert denied 546
    U.S. 935 (2005) ..................................................................................................... 16

*Geraghty and Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917 (5th Cir. 2000) ................... 13

*Halliburton Energy Servs., Inc. v. NL Indus.*, 648 F. Supp. 2d 840 (S.D.
    Tex. 2009) ............................................................................................................... 11

*Licciardi v. Murphy Oil U.S.A., Inc.*, 111 F.3d 396 (5th Cir. 1997) ............................ 12

*OHM Remediation Servs. v. Evans Cooperage Co., Inc.*, 116 F.3d 1574
    (5th Cir. 1997) ....................................................................................................... 11

*R.R. Street & Co. Inc. v. Pilgrim Enters., Inc.*, 166 S.W.3d 232 (Tex.
    2005) ........................................................................................................ 13, 15, 16

*Rogers v. Bromac Title Services, L.L.C.*, 755 F.3d 347 (5th Cir. 2014) ..................... 6, 7

*Uniroyal Chemical Co. v. Deltech Corp.*, 160 F.3d 238 (5th Cir. 1998) as
    modified on rehr'g (Jan. 8, 1999) ..................................................................... 8, 11

*United States v. Alcan Aluminum Corp.*, 990 F.2d 711 (2nd Cir. 1993) ..................... 11

*United States v. Bestfoods*, 524 U.S. 51 (1998) ........................................................... 13

*United States v. Nicolet, Inc.*, 712 F. Supp. 1205 (E.D. Pa. 1989) ............................. 11

*United States v. Western Processing Co., Inc.*, 734 F. Supp. 930 (W.D.
    Wash. 1990) ........................................................................................................... 11

### STATUTES

42 U.S.C. §§ 6901 *et seq* .............................................................................................. 10

42 U.S.C. § 6903(3) ....................................................................................................... 10

42 U.S.C. §§ 9601 *et seq* ........................................ 1, 2, 9, 10, 11, 12, 13, 15, 16, 17

42 U.S.C. § 9601(9) ......................................................................................................... 8

42 U.S.C. § 9601(14) ..................................................................................................... 12

42 U.S.C. § 9601(21) ....................................................................................................... 3

42 U.S.C. § 9601(29) ..................................................................................................... 10

42 U.S.C. § 9604(e) ................................................................................................ 3

42 U.S.C. § 9607(a) ................................................................................................ 1

42 U.S.C. § 9607(a)(2) ........................................................................................... 7

TEX. HEALTH & SAFETY CODE ANN. §§ 361.001 *et seq.* ............................ 1, 2, 13, 14, 15, 16, 17

TEX. HEALTH & SAFETY CODE ANN. § 361.003(7) ...................................... 14

TEX. HEALTH & SAFETY CODE ANN. § 361.003(23) .................................... 13

TEX. HEALTH & SAFETY CODE ANN. § 361.003(25) .................................... 14

TEX. HEALTH & SAFETY CODE ANN. § 361.003(34) .................................... 15

TEX. HEALTH & SAFETY CODE ANN. § 361.003(35) .................................... 15

TEX. HEALTH & SAFETY CODE ANN. § 361.003(36) .................................... 13

TEX. HEALTH & SAFETY CODE ANN. § 361.003(38) .................................... 13

TEX. HEALTH & SAFETY CODE ANN. § 361.271(a)(2) .................................. 12

TEX. HEALTH & SAFETY CODE ANN. § 361.344 ............................................ 1

## Rules

FED. R. CIV. P. 12(b)(6) .......................................................................................... 1

FED. R. CIV. P. 56(a) ............................................................................................... 6

FED. R. CIV. P. 56(c) ............................................................................................... 7

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed its Complaint on August 24, 2014 (Dkt. No. 1) seeking contribution, cost recovery and declaratory relief under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 *et seq*. ("CERCLA") against all defendants including Defendant City of Pasadena, Texas ("City of Pasadena"), cost recovery under the Texas Solid Waste Disposal Act, TEX. HEALTH & SAFETY CODE ANN. §§ 361.001 *et seq*. ("TSWDA") against many defendants including City of Pasadena, and breach of contract claims against certain defendants, for response costs incurred and to be incurred by the USOR Site PRP Group for activities conducted in response to the release or threatened release of hazardous substances at the U.S. Oil Recovery Superfund Site ("USOR Site"). The City of Pasadena owned and operated a sewage treatment plant commonly known as "Old Vince" at the 200 N. Richey portion of the USOR Site from approximately 1945 until U.S. Oil Recovery's purchase of the 200 N. Richey portion of the USOR Site in 2009. Therefore, the USOR Site PRP Group alleges the City of Pasadena is liable under CERCLA Section 107(a) and TSWDA Section 361.271 as a former "owner" and "operator" of a portion of the USOR Site at a time when hazardous substances were released or threatened to be released from the USOR Site and solid wastes were processed, stored or disposed of at the USOR Site.

On April 22, 2015, the City of Pasadena filed a Motion to Dismiss the Complaint Under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted (Dkt. No. 728). The USOR Site PRP Group filed a Motion for Extension of Time to Respond to Defendant City of Pasadena's Motion to Dismiss (Dkt. No. 817) on May 11, 2015 seeking an extension to and including August 13, 2015. The Court entered an Order for Expedited Response on May 12, 2015 (Dkt. No. 877), requiring the City of Pasadena to respond to the Motion for Extension by

May 22, 2015. The City of Pasadena filed its Response in Partial Opposition to Plaintiff's Motion for Extension of Time on May 13, 2015 (Dkt. No. 907). The Court entered an Order granting the Motion for Extension in part on May 18, 2015 (Dkt. No. 940), allowing the USOR Site PRP Group to and including June 13, 2015 to file its response to the City of Pasadena's Motion to Dismiss. The USOR Site PRP Group filed its Response in Opposition to the Motion to Dismiss on June 13, 2015 (Dkt. No. 1277). The Motion to Dismiss is still pending.

**SUMMARY OF ISSUES AND ARGUMENT**

The USOR Site PRP Group respectfully submits this Memorandum in Support of Motion for Partial Summary Judgment. The USOR Site PRP Group seeks partial summary judgment as to the City of Pasadena's liability under CERCLA and the TSWDA, with allocation of the City of Pasadena's equitable share of response costs to be determined at a later date. The Court should grant the USOR Site PRP Group's motion for partial summary judgment as to the City of Pasadena's liability at the USOR Site because there exists no genuine dispute as to material facts concerning the City of Pasadena's liability under CERCLA and the TSWDA.

**STATEMENT OF MATERIAL FACTS**

1.      The USOR Site consists of both the US Oil Recovery facility located at 400 N. Richey Street and the MCC Recycling facility located at 200 N. Richey Street in Pasadena, Texas. *See* Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-10-11, effective August 25, 2011 (hereinafter "Removal Action AOC"), Definition "p." at p.3, Finding of Fact "a." at p.4, and Conclusion of Law and Determination "a." at p.7 (Exh. A hereto).

2.      There has been an actual or threatened release of hazardous substances from the USOR Site. *See* Removal Action AOC, Findings of Fact "k." – "r." at p.6, and Conclusion of Law and Determination "b." and "e." at p.7 (Exh. A hereto).

3.      The USOR Site PRP Group has incurred and will continue to incur response costs as a result of the actual release or threatened release of hazardous substances at the USOR Site. *See* July 17, 2015 Affidavit of Joe Biss (Exh. C hereto); *see generally* Removal Action AOC (Exh. A hereto); Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, U.S. EPA Region 6, CERCLA Docket No. _____, effective May 14, 2015 (hereinafter "AOI-1 RI/FS AOC") (Exh. B hereto).

4.      The City of Pasadena is a municipality, which is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

5.      U.S. EPA ("EPA") sent the City of Pasadena a March 12, 2013 general notice letter notifying the City of Pasadena of its potential CERCLA liability at the USOR Site and EPA and Plaintiff's ongoing removal action activities; requesting that the City of Pasadena negotiate in good faith a settlement agreement with EPA to perform a Remedial Investigation and Feasibility Study ("RI/FS") at the USOR Site; and requesting that the City of Pasadena provide information and documents to EPA pursuant to CERCLA Section 104(e). *See* March 12, 2013 EPA General Notice Letter with 104(e) Information Request questions to City of Pasadena (Exh. D hereto).

6.      The City of Pasadena responded to EPA's CERCLA 104(e) Information Request by letter dated June 14, 2013 from Robin Green, P.E., Public Works Director for the City of Pasadena (hereinafter "City of Pasadena's EPA Information Request Response") (Exh. E hereto).

7.      The City of Pasadena owned the 200 N. Richey portion of the USOR Site from 1944 to 2009. *See* City of Pasadena's EPA Information Request Response at pp.1-2 (Exh. E hereto).

8.      The City of Pasadena operated a wastewater treatment plant commonly known as "Old Vince" at the 200 N. Richey portion of the USOR Site from 1944 until March 1994. *Id.* at pp.2-3.

9.      Old Vince comprised "land, structures, appurtenances, and other improvements" at the 200 N. Richey portion of the USOR Site, including two clarifiers, two oxygen digesters, an oxygen activation sludge unit, an oxygen plant, a chlorination building, a lift station, a gravity thickener, an aerobic digester, a belt filter press building, a pump control room, a chlorine contact tank (basin/concrete containment area), a high-rate trickling filter, oil-water separator, primary clarifier, final clarifier, and two lift stations. *See* Removal Action AOC, Findings of Fact "e." at p.5 (Exh. A hereto).

10.      From March 1, 1994 through April 7, 2004, the City of Pasadena still owned the 200 N. Richey portion of the USOR Site and contracted with Severn Trent Services to operate Old Vince. *See* City of Pasadena's EPA Information Request Response at pp.2-3 (Exh. E hereto).

11.      Hazardous substances were used in the course of treating domestic wastewater during the City of Pasadena's ownership of the 200 N. Richey portion of the USOR Site and during the operations of Old Vince by the City of Pasadena and Severn Trent Services. *Id.* at 4-6.

12.      Domestic wastewater containing hazardous substances was spilled and/or released at various times from Old Vince and the 200 N. Richey portion of the USOR Site between 1944 and 2004 when the City of Pasadena owned the 200 N. Richey portion of the USOR Site and from 1944 to 1994 when the City of Pasadena operated Old Vince. *Id.* at 8-10.

13.     The hazardous substances contained in the domestic wastewater spilled and/or released from Old Vince operations from 1944 to 2004 included copper, lead and zinc. *See* February 20, 2014 letter from Robin Green, P.E., Public Works Director, City of Pasadena, to EPA (hereinafter "City of Pasadena Feb. 20, 2014 Letter to EPA"), at p.2 (Exh. F hereto); *see also* 40 CFR 302.4 – Designation of hazardous substances (Exh. G hereto).

14.     Between April 2002 and July 2003, at a time period when the City of Pasadena owned the 200 N. Richey portion of the USOR Site, there were several exceedences of hazardous substances such as ammonia (NH3) and chlorine in the effluent discharged and/or released from the Old Vince operations. *See* City of Pasadena's EPA Information Request Response, at pp.8-10 (Exh. E hereto); TCEQ Agreed Order, Docket No. 2003-1017-MWD-E, effective May 11, 2005 (hereinafter "TCEQ Agreed Order") (Exh. H hereto); *see also* 40 CFR 302.4 – Designation of Hazardous Substances (Exh. G hereto).

15.     Municipal wastewater treated at Old Vince from 1944 to 2004 contained at least the following hazardous substances, as evidenced by sample analyses of effluent samples collected by the City of Pasadena as part of its NPDES permitting process during the following years: 1990 – copper, nickel, phenols, toluene and zinc; 1997 – aluminum, barium, zinc; 2001 - aluminum, barium, chloroform, 1,4-dichlorobenzene, phenols and zinc. *See* various City of Pasadena effluent date reports from 1990, 1997 and 2001 (combined into Exh. I hereto); *see also* 40 CFR 302.4 – Designation of Hazardous Substances (Exh. G hereto).

16.     From 1944 until at least 1983 when a sludge thickener and belt presses were installed at Old Vince, sludges that were generated by Old Vince operations were managed in drying beds placed directly on soils, allowing liquid in the sludges to either evaporate or infiltrate

5

into the soils under the drying beds. *See* historical map of Old Vince drying bed locations (Exh. J hereto).

17.     Testing of the sludges generated by Old Vince during the following years showed that the historical sludges generated by Old Vince operations contain at least the following hazardous substances: 1996 – barium, benzene, chromium, copper, cyanide, lead, nickel, phenols and zinc; 1998 – lindane (gamma-BHC) #2 and methyl ethyl ketone; 2000 – barium and selenium. *See* various City of Pasadena sludge data reports from 1996, 1998 and 2000 (combined into Exh. K hereto); *see also* 40 CFR 302.4 – Designation of Hazardous Substances (Exh. G hereto).

18.     Additional investigations and sampling performed by the USOR Site PRP Group as a result of the City of Pasadena's refusal to cooperate with EPA or the USOR Site PRP Group reveals that the City of Pasadena left waste materials and sludges at the 200 N. Richey portion of the USOR Site from Old Vince operations, which contain the following hazardous substances: aluminum; arsenic; barium; cadmium; chromium; copper; lead; nickel; selenium; silver and zinc. *See* July 22, 2014 Report entitled "Old Vince Bayou Wastewater Treatment Plant Residual Materials Sampling" (Exh. L hereto); *see also* 40 CFR 302.4 – Designation of Hazardous Substances (Exh. G hereto).

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Rogers v. Bromac Title Services, L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (citing FED. R. CIV. P. 56(a)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

6

and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty*

*Lobby, Inc*., 477 U.S. 242, 248 (1986) (quoting FED. R. CIV. P. 56(c)). Issues are "'genuine' only

if they require resolution by a trier of fact." *Corsair v. Stapp Towing Co., Inc.*, 228 F. Supp. 2d

795, 797 (S.D. Tex. 2002). (citing *Anderson,* 477 U.S. at 250). "A genuine dispute as to a

material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" *Rogers*, 755 F.3d at 350. (citing *Anderson*, 477 U.S.  at 248). The Court

must "construe[] all facts and inferences in the light most favorable to the nonmoving party . . . .

[b]ut [s]ummary judgment may not be thwarted by conclusional allegations, unsupported

assertions, or presentation of only a scintilla of evidence." *Rogers*, 755 F.3d at 350. (internal

citations and quotations omitted). "The mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment."

*Corsair*, 228 F. Supp. 2d at 797.

## ARGUMENT

I. **The USOR Site PRP Group Is Entitled to Judgment as a Matter of Law on the City of Pasadena's Liability Under CERCLA**

The City of Pasadena's liability under CERCLA is governed by Section 107(a)(2), which

defines "covered persons" to include, in relevant part:

> "any person who at the time of disposal of any hazardous substance owned or
> operated any facility at which such hazardous substances were disposed of . . .
> from which there is a release, or a threatened release which causes the incurrence
> of response costs, or a hazardous substance, shall be liable . . . ."

42 U.S.C. § 9607(a)(2). Thus, to prevail on partial summary judgment as to the City of

Pasadena's CERCLA liability, the USOR Site PRP Group need only demonstrate four liability

elements: (1) the USOR Site is a facility, at which (2) there was a release or threatened release,

which (3) caused incurrence of response costs, and that (4) the City of Pasadena either "owned"

or "operated" Old Vince when hazardous substances were disposed there. *See, e.g., Uniroyal*

*Chemical Co. v. Deltech Corp.*, 160 F.3d 238, 242–43 (5th Cir. 1998) as modified on rehr'g (Jan. 8, 1999); *Asarco LLC v. Cemex, Inc.*, 21 F. Supp. 3d 784, 803 (W.D. Tex. 2014) (citing *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir. 1989)).

First, the USOR Site, including the 200 N. Richey portion, is a facility as defined by CERCLA. CERCLA defines "facility" broadly to mean "any building, structure, installation, equipment" and so on, or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . ." 42 U.S.C. § 9601(9). EPA has made this simple factual determination in both the Removal Action AOC and the AOI-1 RI/FS AOC. Second, EPA has determined there has been a release or threatened release of hazardous substances at the USOR Site, including actual or threatened releases from the 200 N. Richey portion of the Site. Third, such actual or threatened releases have caused the incurrence of response costs by the USOR Site PRP Group. The USOR Site PRP Group members are the respondents to both the Removal Action AOC and the AOI-1 RI/FS AOC and have and will continue to incur millions of dollars of response costs to comply with both AOCs. *See* July 17, 2015 Affidavit of Joe Biss (Exh. C hereto); see *generally* Removal Action AOC and AOI-1 RI/FS AOC (Exhs. A and B hereto).

This leaves the final element of liability, which is whether the City of Pasadena owned or operated the 200 N. Richey portion of the USOR Site at a time when any hazardous substances were released from 60 years of Old Vince operations. The City of Pasadena readily admitted to EPA it owned the 200 N. Richey portion of the USOR Site from 1944 to 2009. *See* City of Pasadena's EPA Information Request Response at pp.1-2 (Exh. E hereto). The City of Pasadena also readily admitted to EPA it operated Old Vince at the 200 N. Richey portion of the Site from 1944 to 1994, when it contracted with Severn Trent Services to continue to operate Old Vince

for an additional 10 years until 2004. *Id.* at pp.2-3. This just leaves the question of whether any hazardous substances were released from Old Vince during the 60 years it operated from 1944 to 2004. The record is already replete with admissions by the City of Pasadena and documents proving that at least some hazardous substances, as defined by CERCLA, were released from Old Vince operations from 1944 to 2004:

- Domestic wastewater containing hazardous substances was spilled and/or released at various times from Old Vince operations from 1944 to 2004. *See* City of Pasadena's EPA Information Request Response at pp.8-10 (Exh. E hereto);

- The City of Pasadena readily admitted to EPA that such domestic wastewater contained or at least included copper, lead and zinc, all of which are hazardous substances as defined by CERCLA. *See* City of Pasadena Feb. 20, 2014 Letter to EPA, at p.2 (Exh. F hereto); *see also* 40 CFR 302.4 – Designation of Hazardous Substances (Exh. G hereto);

- Between at least April 2002 and July 2003 when the City of Pasadena owned the 200 N. Richey portion of the USOR Site, there were several exceedences of ammonia and chlorine (both hazardous substances as defined by CERCLA) in the effluent discharged and/or released from the Old Vince operations. *See* City of Pasadena's EPA Information Request Response, at pp.8-10 (Exh. E hereto); *see also* TCEQ Agreed Order (Exh. H hereto); *see also* 40 CFR 302.4 – Designation of Hazardous Substances (Exh. G hereto);

- As part of its NPDES permitting process, the City of Pasadena produced samples of effluents from Old Vince operations which showed that such effluents contained reportable quantities of at least aluminum, barium, chloroform, copper, 1,4-dichlorobenzene, nickel, phenols, toluene and zinc – all of which are hazardous substances as defined by CERCLA. *See* various City of Pasadena effluent date reports

9

from 1990, 1997 and 2001 (combined into Exh. I hereto); *see also* 40 CFR 302.4 –
Designation of Hazardous Substances (Exh. G hereto);

- From 1944 until at least 1983, sludges that were generated by Old Vince operations were
  managed in drying beds placed directly on soils, allowing liquid in the sludges to either
  evaporate or infiltrate into the soils under the drying beds. *See* historical map of Old
  Vince drying bed locations (Exh. J hereto);

- Testing of the sludges generated by Old Vince during the following years showed that the
  historical sludges generated by Old Vince operations contain reportable quantities of at
  least barium, benzene, chromium, copper, cyanide, lead, lindane (gamma-BHC) #2,
  methyl ethyl ketone, nickel, phenols, selenum and zinc; 1998 – all of which are
  hazardous substances as defined by CERCLA. *See* various City of Pasadena sludge data
  reports from 1996, 1998 and 2000 (combined into Exh. K hereto); *see also* 40 CFR 302.4
  – Designation of Hazardous Substances (Exh. G hereto);

- The City of Pasadena left waste materials and sludges at the 200 N. Richey portion of the
  USOR Site from Old Vince operations, which contain the following hazardous
  substances: aluminum; arsenic; barium; cadmium; chromium; copper; lead; nickel;
  selenium; silver and zinc. *See* July 22, 2014 Report entitled "Old Vince Bayou
  Wastewater Treatment Plant Residual Materials Sampling" (Exh. L hereto); *see also* 40
  CFR 302.4 – Designation of Hazardous Substances (Exh. G hereto).

Regarding the disposal of hazardous substances, CERCLA Section 101(29) defines
"disposal" as it is defined under the Resource Conservation Recovery Act, 42 U.S.C. §§ 6901 *et
seq*. *See* 42 U.S.C. § 9601(29). "Disposal" is defined broadly to mean:

the discharge, deposit, injection, dumping, spilling, leaking, or placing of any
solid waste or hazardous waste into or on any land or water so that such solid

waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3). The City of Pasadena's own admissions to EPA, along with attendant documents reproduced herein, demonstrate that several types of hazardous substances were disposed of during the City of Pasadena's ownership of the 200 N. Richey portion of the USOR Site and 60 years of Old Vince operations, including 50 years of operation by the City of Pasadena itself. Simply put, there is absolutely no reasonable basis for the City of Pasadena to argue that no hazardous substances whatsoever were released from the 200 N. Richey portion of the USOR Site at any time during 60 years of Old Vince operations.

The City of Pasadena's lack of cooperation with EPA and the USOR Site PRP Group appears to be based on a single, misplaced argument. The City of Pasadena refuses to cooperate based on its notion that the levels of hazardous substances released at various and multiple times during 60 years of Old Vince operations were at or below "background levels." *See generally* City of Pasadena's EPA Information Request Response (Exh. E hereto); City of Pasadena Feb. 20, 2014 Letter to EPA (Exh. F hereto). The USOR Site PRP Group has no obligation to prove that certain hazardous substances attributable to the City of Pasadena are the same hazardous substances currently being released or threatened to be released at the USOR Site, or that the hazardous substances attributable to the City of Pasadena exceed some contaminant threshold. *See, e.g.*, *Uniroyal Chemical Co., Inc.*, 160 F.3d at 242–43; *Halliburton Energy Servs., Inc. v. NL Indus.*, 648 F. Supp. 2d 840, 848 (S.D. Tex. 2009) ("Because CERCLA imposes strict liability, plaintiffs generally do not need to prove that the defendant caused the contamination, only that the defendant is a 'covered person.'") (citing *OHM Remediation Servs. v. Evans Cooperage Co., Inc.*, 116 F.3d 1574, 1578 (5th Cir. 1997) and *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 721 (2nd Cir. 1993)); *United States v. Western Processing Co., Inc.*, 734 F. Supp. 930, 936

11

(W.D. Wash. 1990) (plaintiff need not prove that the release was above background levels; the principle that the law does not concern itself with trifles is not a defense to CERCLA liability); *United States v. Nicolet, Inc.*, 712 F. Supp. 1205, 1207 (E.D. Pa. 1989) (noting that, "as long as a substance is on one or more of the lists identified at 42 U.S.C. § 9601(14), it is a hazardous substance irrespective of the volume or concentration of the substance found at the site in question"). Although the Fifth Circuit Court of Appeals has determined that whether a hazardous substance exceeds "background levels" may be relevant to determining if there was a "release" which caused the incurrence of response costs, *Licciardi v. Murphy Oil U.S.A., Inc.*, 111 F.3d 396, 398–99 (5th Cir. 1997), this is irrelevant to the "covered person" question. *See Asarco LLC*, 21 F. Supp.3d at 803 ("[T]he only causation required under CERCLA is that the release of hazardous substances at the 'facility' cause the response costs; a plaintiff does not need to prove that the defendant's waste caused the response costs . . .") (internal citations omitted).

In sum, the City of Pasadena can present no genuine dispute of material fact to dispute its liability under CERCLA. The USOR Site PRP Group is entitled to judgment as a matter of law as to the City of Pasadena's CERCLA liability, with allocation of the City of Pasadena's reserved for a later date.

## II.    The USOR Site PRP Group Is Entitled to Judgment as a Matter of Law on the City of Pasadena's Liability under the TSWDA

The City of Pasadena's liability under the TSWDA is governed by Section 361.271(a)(2) which defines "persons responsible for solid waste" to include, in relevant part, persons which "owned or operated a solid waste facility at the time of processing, storage, or disposal of any solid waste." TEX. HEALTH & SAFETY CODE ANN. § 361.271(a)(2). Thus, to prevail on this Motion, the USOR Site PRP Group need only demonstrate that the City of Pasadena (1) is a

"person" which (2) owned or operated (3) a solid waste facility and that (4) solid waste was processed, stored or disposed there during the time of ownership or operation.

First, "person" is defined as "an individual, corporation, organization, government or governmental subdivision or agency, business trust, partnership, association, or any other legal entity." *Id*. § 361.003(23). The City of Pasadena is a "person" under this definition.

Second, the City of Pasadena owned and operated Old Vince. The City of Pasadena admitted to EPA it owned the 200 N. Richey portion of the USOR Site from 1944 until U.S. Oil Recovery purchased Old Vince in January 2009. *See* City of Pasadena's EPA Information Request Response at pp.1-2 (Exh. E hereto). This district has applied federal CERCLA jurisprudence to interpret the meaning of "operator" under the TSWDA. *Celanese Corp., v. Coastal Water Auth.*, No. H-06-2265, 2008 WL 2697321, **2–3 (S.D. Tex. July 2, 2008) (citing *R.R. Street & Co. Inc. v. Pilgrim Enters., Inc.*, 166 S.W.3d 232, 242 (Tex. 2005). Under CERCLA, an operator is "simply someone who directs the workings of, manages, or conducts the affairs of a facility . . ." *Celanese Corp.*, 2008 WL 2697321, at *3 (quoting *Geraghty and Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 928 (5th Cir. 2000) (quoting *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998))). The City of Pasadena admitted to EPA it was an "operator" of Old Vince from 1944 to 1994. *See* City of Pasadena's EPA Information Request Response at pp.2-3 (Exh. E hereto).

Third, Old Vince falls within the meaning of a "solid waste facility," which is defined broadly as:

> all contiguous land, including structures, appurtenances, and other improvements on the land, *used for processing, storing, or disposing of solid waste*. The term includes a *publicly or privately owned solid waste facility consisting of several processing, storage, or disposal operational units* such as one or more landfills, surface impoundments, or a combination of units.

13

TEX. HEALTH & SAFETY CODE ANN. § 361.003(36) (emphases added). In turn, "storage" is defined as "the temporary holding of solid waste, after which the solid waste is processed, disposed of, or stored elsewhere." *Id*. § 361.003(38). "Disposal" is defined, to mean:

> discharging depositing, injecting, dumping, spilling, leaking, or placing of solid waste or hazardous waste, whether containerized or uncontainerized, into or on land or water so that the solid waste or hazardous waste or any constituent thereof may be emitted into the air, discharged into surface water or groundwater, or introduced into the environment in any other manner.

*Id*. § 361.003(7). Finally "processing" is defined in relevant part as "the extraction of materials from or the transfer, volume reduction, conversion to energy, or other separation and preparation of solid waste for reuse or disposal . . . ." *Id*. § 361.003(25).

Applying all of the definitions relevant to whether a facility is a "solid waste facility," Old Vince comprised "land, structures, appurtenances, and other improvements" at the 200 N. Richey portion of the USOR Site, including two clarifiers, two oxygen digesters, an oxygen activation sludge unit, an oxygen plant, a chlorination building, a lift station, a gravity thickener, an aerobic digester, a belt filter press building, a pump control room, a chlorine contact tank (basin/concrete containment area), a high-rate trickling filter, oil-water separator, primary clarifier, final clarifier, and two lift stations. *See* Removal Action AOC, Findings of Fact "e." at p.5 (Exh. A hereto). During the City of Pasadena's ownership of the 200 N. Richey portion of the USOR Site and operation of Old Vince at that location, Old Vince was a sewage treatment plant which received, processed, temporarily stored, and disposed of municipal wastewater, as well as domestic sewage. *See* City of Pasadena's EPA Information Request Response at pp.2-32 (Exh. E hereto). Therefore, Old Vince was a "solid waste facility" within the meaning of the TSWDA.

This wastewater and sludges processed, stored and disposed of at Old Vince are "solid waste" within the meaning of the TSWDA, defined in relevant part as follows:

14

garbage, rubbish, refuse, *sludge from a waste treatment plant, water supply treatment plant*, or air pollution control facility, and *other discarded material*, including solid, liquid semisolid, or contained gaseous material resulting from industrial, municipal, commercial, mining, and agricultural operations and from community and institutional activities. The term:

      (A) does not include:

            (i) solid or dissolved material in *domestic* sewage . . .

      (B) does include hazardous substances . . . .

*Id* § 361.003(34) and (35) (emphases added). Thus, definition of "solid waste" specifically includes, but is not limited to, hazardous substances. *Id*. Consequently, the TSWDA imposes even broader liability upon "persons responsible for solid waste" than CERCLA would impose upon "responsible persons."

As explained in detail in the previous Section, the record is already replete with admissions by the City of Pasadena and documents proving that at least some hazardous substances were released and/or disposed of from Old Vince operations from 1944 to 2004. *See infra* pp.9-11 (and citations to Exhibits hereto). The City of Pasadena cannot take refuge in the "domestic sewage" exclusion. Texas courts interpret this to mean residential domestic sewage. *See Pilgrim Enters.*, 166 S.W.3d at 249 (applying federal district court's reasoning in RCRA case to TSWDA that if a hazardous substance entered the environment prior to mixing with "sewage from residential sources," it could not be "solid or dissolved material in domestic sewage") (internal citation omitted). Moreover, even if hazardous substances mingled in residential wastewater fall within the domestic sewage exclusion, the definition of "solid waste" specifically includes "sludge from a waste treatment plant" and "sludge from a water supply treatment plant." TEX. HEALTH & SAFETY CODE ANN. § 361.003(34) and (35).

As with the City of Pasadena's CERCLA liability, the City of Pasadena can present no genuine dispute of material fact as to its liability under the TSWDA. The USOR Site PRP Group

is entitled to judgment as a matter of law as to the City of Pasadena's TSWDA liability, with

allocation of the City of Pasadena's reserved for a later date.

III.    **The Court can Determine Liability now and Allocate the City of Pasadena's Equitable Share of Response Costs later**

Because of the complexity of CERCLA cases, courts generally bifurcate them into at

least two phases, determining liability first, and allocating liability later. *See, e.g.*, *Amoco Oil Co.*

*v. Borden, Inc.*, 889 F.2d 664, 667 (5th Cir. 1989) (summarizing cases); *GenCorp, Inc. v. Olin*

*Corp.*, 390 F.3d 433, 441 (6th Cir. 2004) cert denied 546 U.S. 935 (2005) (reviewing district

court case in three-phase CERCLA trial which determined liability in Phase I, allocated liability

percentages in Phase II and assigned a dollar amount to the percentages in Phase III).

"Bifurcation and the use of summary judgment provide efficient approaches to these cases by

narrowing the issues at each phase, by avoiding remedial questions if no liability attaches, and by

potentially hastening remedial action or settlement discussions once liability is determined."

*Amoco Oil Co.*, 889 F.2d at 667–68. The Texas Supreme Court has determined that guidelines

developed in federal CERCLA cases are "faithful to the statutory language and purposes of

[T]SWDA." *Celanese Corp., v. Coastal Water Auth.*, No. H-06-2265, 2008 WL 2697321, *4

(S.D. Tex. July 2, 2008) (citing *R.R. Street & Co. Inc. v. Pilgrim Enters., Inc.*, 166 S.W.3d 232,

242 (Tex. 2005)). Therefore, bifurcation is equally appropriate as to the USOR Site PRP Group's

CERCLA and TSWDA causes of action. As demonstrated above, there is no question that the

City of Pasadena is liable as an owner or operator under both CERCLA and the TSWDA, and

this Court should enter an order granting this Motion for Partial Summary Judgment as to

liability, with allocation reserved for a later phase of trial.

Such a result is also important at this stage of the USOR Site and this litigation because

the City of Pasadena's continued lack of cooperation with EPA and the USOR Site PRP Group

16

continues to cause problems at the USOR Site. With the recent record flooding in Texas and the USOR Site area, EPA and the USOR Site PRP Group continue to attempt to convince the City of Pasadena to cooperate since the City of Pasadena and its present and former employees may possess unique knowledge as to the workings of the Old Vince buildings and piping system, which could help control the adverse effects from the flooding. The City of Pasadena may be willing to finally cooperate with EPA and the USOR Site PRP Group once it understands that its reasons for refusing to cooperate are not viable defenses to liability under CERCLA and/or the TSWDA.

## CONCLUSION

For the foregoing reasons, Plaintiff USOR Site PRP Group respectfully requests the Court grant the USOR Site PRP Group partial summary judgment as to the City of Pasadena's liability at the USOR Site under CERCLA and the TSWDA, and for such other and further relief as the Court deems just and appropriate under the circumstances. A proposed Court Order to this effect is attached hereto as Exhibit M.

Dated:   July 20, 2015

Respectfully submitted,

THE JUSTIS LAW FIRM LLC

/s/ Gary D. Justis
Gary D. Justis        S.D. TX ID 2375637
Rachel D. Guthrie     S.D. TX ID 2423279
10955 Lowell Ave.
Suite 520
Overland Park, KS 66210-2336
Telephone: (913) 955-3710
Facsimile:  (913) 955-3711
Email: gjustis@justislawfirm.com
Email: rguthrie@justislawfirm.com

ATTORNEYS FOR PLAINTIFF USOR SITE PRP GROUP

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2015, a copy of the foregoing Plaintiff's Motion for

Partial Summary Judgment against Defendant City of Pasadena, Texas was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access the filing through the Court's Electronic Case Filing System.

/s/ Gary D. Justis
Gary D. Justis