United States District Court
Southern District of Texas
**ENTERED**
April 07, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| USOR SITE PRP GROUP, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:14-CV-2441 |
| § | |
| A&M CONTRACTORS, INC., *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER ESTABLISHING
ENVIRONMENTAL CONTAMINATION AT U. S. OIL RECOVERY
SUPERFUND SITE AND THE MCC RECYCLING FACILITY**

**I.**

**I.   INTRODUCTION**

Before the Court are several and innumerable motions for summary judgment filed by certain defendants and cross-motions for partial summary judgment filed by the plaintiff, USOR Site PRP Group ("USOR")[1]. Because the number of motions for summary judgment and cross-motions for summary judgment are so numerous, the Court is of the opinion that an omnibus memorandum opinion identifying and discussing undisputed facts and as well, the rudiments of the applicable law, associated solely with the issue of liability under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA") and the Texas Solid Waste Disposal Act ("TSDWA"). With a memorandum opinion in place and the issue of liability resolved, the Court will hereafter proceed with addressing the parties' summary judgment motions.

---

[1] The Court adopts the USOR Statement of Undisputed Material Facts, found in its motion for summary judgment that includes attached exhibits, in reaching its conclusion on the issue of liability. To the extent that any defendant is found liable that finding rest in the individual defenses and facts to be determined by the Court. It is noteworthy that no defendant has challenged the EPA's administrative findings and conclusion.

## II. JURISDICTIONAL BASES

This suit was filed by USOR to collect response costs and expenses due to alleged environmental contamination at the U. S. Oil Recovery Superfund Site ("USOR Site") and the MCC Recycling Facility located at 200 N. Richey and 400 N. Richey in Pasadena, Texas respectively. On August 14, 2014, the USOR filed this complaint against hundreds of defendants asserting that they are collectively responsible, under federal and state law, for response costs and expenses associated with remediating environmental contamination at the identified USOR Sites.

Since the original complaint was filed, the USOR has amended its suit on two occasions, the last on August 1, 2016. The USOR seeks contribution, cost recovery that has occurred or will occur, and declaratory relief under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and cost recovery under the Texas Solid Waste Disposal Act ("TSWDA"). *See* [42 U.S.C. §§ 9601 *et. seq.*; Tex. Health & Safety Code Ann. §§ 361.001 *et. seq.*, respectively]. This Court has jurisdiction to entertain the issues raised by the USOR under both CERCLA and TSWDA.

## III. HISTORICAL BACKGROUND INCLUDING ADMINISTRATIVE RECORD

The USOR consists of firms, corporations, associations, and/or partnerships. The EPA has determined that the members of the USOR are "persons" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21). *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "c," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC Conclusions of Law and Determinations ¶ 28 (Dkt. No. 1429-2, at 8)]; and, (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 23 (Dkt. No. 3187-1, at 6)]. Likewise, TCEQ has determined that the members of the USOR are "persons" as defined by Section 361.003(23) of

the TSWDA for purposes of USOR's action under Section 361.344 of the TSWDA, TEX. HEALTH & SAFETY CODE ANN. § 361.003(23). *See* [TCEQ Approval Letter (Dkt. No. 3187-3)].

The members of the USOR are respondents to Removal Action AOC, AOI-1 RI/FS AOC, and Second Removal Action AOC. The USOR is conducting response activities at the USOR Site. *See generally* (a) [Removal Action AOC (Dkt. No. 1429-1)]; (b) [AOI-1 RI/FS AOC (Dkt. Nos. 1429-1 and 1429-2)]; (c) [Second Removal Action AOC (Dkt. Nos. 3187-1 and 3187-2)]; and, (d) [TCEQ Approval Letter (Dkt. No. 3187-3)].

The USOR Site consists of approximately 18 acres, located generally at the US Oil Recovery facility at 400 N. Richey Street and the MCC Recycling facility at 200 N. Richey Street in Pasadena, Texas, and EPA has determined the USOR Site is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9). *See* (a) [Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-10-11, effective August 25, 2011 ("Removal Action AOC"), Definition "p." at p.3, Finding of Fact "a." at p.4, and Conclusion of Law and Determination "a." at p.7 (Dkt. No. 1429-1, at 3, 4, 7)][2]; (b) [Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, U.S. EPA Region 6, CERCLA Docket No. 06-03-15 ("AOI-1 RI/FS AOC"), Definition "u." at p.5, Finding of Fact p.6, ¶ 13, and Conclusions of Law and Determinations at p.8, ¶ 25 (Dkt. No. 1429-2, at 5, 6, 8)][3]; and, (c) [Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-11-16 ("Second Removal Action AOC"), at Definition "s." at p.4, Finding of Fact "a." at p.4, and Conclusions of Law and Determinations, at p.6, ¶ 20 (Dkt. No. 3187-1, at 4, 6)].[4]

---

[2] The Removal Action AOC is in the record as Exhibit A (Dkt. No. 1429-1).

[3] The AOI-1 RI/FS AOC is in the record as Exhibit B (Dkt. Nos. 1429-2 and 1430).

[4] The Second Removal Action AOC is in the record as Exhibit A (Dkt. Nos. 3187-1 and 3187-2).

The USOR Site was an oil processing and waste treatment facility that received and performed pretreatment of municipal and industrial Class I and Class II wastewater, characteristically hazardous waste, used oil and oily sludges, and municipal solid waste. *See* (a) [Removal Action AOC, Findings of Fact "a" and "c" at p.4 (Dkt. No. 1429-1, at 4)]; (b) [AOI-1 RI/FS AOC, Findings of Fact 13 and 15 at p.6 (Dkt. No. 1429-2 at 6)]; and, (c) [Second Removal Action AOC, Findings of Fact ¶ 11 at p.5 (Dkt. No. 3187-1, at 5)]. The EPA has determined that there has been a release or threatened release of hazardous substances from the USOR Site as defined by Section 101(22) of CERCLA, 42 U.S.C. § 9601(22). *See* [(a) Removal Action AOC, Findings of Fact "k." – "r." at p.6, and Conclusion of Law and Determination "b." and "e." at p.7 (Dkt. No. 1429-1, at 6, 7)]; (b) [AOI-1 RI/FS AOC, Conclusions of Law and Determinations ¶¶ 26–27 (Dkt. No. 1429-2, at 8)]; (c) [Second Removal Action AOC, Findings of Fact ¶¶ 12–14, Conclusions of Law and Determinations ¶¶ 21–22 (Dkt. No. 3187-1, at 5–6)]; and (d) [EPA, Designation of Hazardous Substances, 40 CFR § 302.4 (Dkt. No. 1431-4)].[5]

The TCEQ has also determined that there has been a release or threatened release from the USOR Site as defined by Section 361.003(28) of the TSWDA for purposes of USOR's action under Section 361.344 of the TSWDA, TEX. HEALTH & SAFETY CODE ANN. § 361.003(28). *See* [TCEQ Approval Letter (Dkt. No. 3187-3)].[6] Moreover, it has approved the USOR Site PRP Group's response activities as the USOR Site. *See* [TCEQ Approval Letter [Dkt. No. 3187-3)].

The USOR Site PRP Group has incurred and will continue to incur response costs as a result of the release or threatened release of hazardous substances and solid waste at the USOR

---

[5] The EPA Designation of Hazardous Substances is in the record as Exhibit G (Dkt. No. 1431-4).

[6] The TCEQ Approval Letter is in the record as Exhibit B (Dkt. No. 3187-3).

Site. *See* (a) [Affidavit of Joe Biss dated October 26, 2016 (Dkt. No. 3187-4)][7]; (b) [Removal Action AOC (Dkt. No. 1429-1)]; (c) [AOI-1 RI/FS AOC (Dkt. Nos. 1429-1 and 1429-2)]; (d) [Second Removal Action AOC (Dkt. Nos. 3187-1 and 3187-2)]; and (e) [TCEQ Approval Letter (Dkt. No. 3187-3)].

The EPA has determined that the USOR's response costs are necessary to address the release or threatened release of hazardous substances from the USOR Site. *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "f," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC, Conclusions of Law and Determinations ¶¶ 30–31 (Dkt. No. 1429-2, at 8)]; and (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 25 (Dkt. No. 3187-1, at 6–7)]. As well, TCEQ has determined that the USOR's response costs are necessary to address the release or threatened release of solid waste from the USOR Site. *See* [TCEQ Approval Letter (Dkt. No. 3187-3)]. The EPA has also determined that the USOR's response costs are consistent with the National Contingency Plan ("NCP"). *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "f," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC Conclusions of Law and Determinations ¶ 31 (Dkt. No. 1429-2, at 8)]; (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 25 (Dkt. No. 3187-1, at 6–7)]. The Court adopts the EPA's findings as to response costs necessity and consistency.

## IV.     SUMMARY JUDGMENT STANDARD

Both the USOR and certain defendants have filed motions and/or cross-motions for summary judgment. These motions are not addressed in this Memorandum. However, the law that controls the outcome is set forth hereinafter.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material"

---

[7] The Affidavit of Joe Biss is in the record as Exhibit C (Dkt. No. 3187-4).

if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).

Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."* *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

V.   **STATEMENT OF CONTROLLING THE LAW**

　　A.   *Federal Law Standard and Related EPA Findings*

To establish its CERCLA claim, a plaintiff must establish that a defendant is a "covered person" within the meaning of Section 107(a)(3) of CERCLA, which provides, in relevant part:

> (a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section. . .
>
> (3) any person who, by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity containing such hazardous substances. . ., and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence for response costs, of a hazardous substance, shall be liable for —
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . .

42 U.S.C. § 9607(a). Section 107(a) requires a plaintiff to demonstrate that: (1) the USOR Site is a facility, at which (2) there was a release or threatened release, (3) causing the incurrence of response costs, necessary and consistent with the national contingency plan and, (4) the defendant either "arranged for disposal or treatment" or "arranged with a transporter for transport for "disposal or treatment" of "hazardous substances." *See, e.g.*, *Uniroyal Chemical Co. v. Deltech Corp.*, 160 F.3d 238, 242–43 (5th Cir. 1998) as modified on rehr'g (Jan. 8, 1999).

Concerning the question of "facility", the EPA has determined that the USOR Site is a "facility" within the meaning of CERCLA in the Removal Action AOC, the AOI-1 RI/FS AOC, and in the Second Removal Action AOC. Therefore, the EPA's factual determinations warrant deference by this Court. *See, e.g.*, *Galveston-Houston Ass'n for Smog Prevention (GHASP) v. U.S. E.P.A.*, 289 Fed.Appx. 745, 749 (5th Cir. 2008) (deferring to EPA, but noting heightened

deference for complex scientific findings as opposed to simple findings of fact). As discussed earlier, the Court adopts this factual determination.

There has also been an EPA finding that a "release" or threatened "release" of hazardous substances from the USOR Sites occurred. CERCLA defines "release" broadly to mean "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . . ." *See* 42 U.S.C. § 9601(22). As a result of the release or threatened release of hazardous substances at or from the USOR Site, the USOR has incurred response costs. This determination also warrants deference because of the complexity of the data. *Id.* Therefore, this undisputed factual determination is adopted by the Court.

The USOR is the respondent in Removal Action AOC, the AOI-1 RI/FS AOC, and the Second Removal Action AOC. As such, and based on EPA findings, they have and will continue to incur response costs in order to comply with EPA administrative orders. These response costs, as found by the EPA, are "necessary" and this determination in the Court's opinion warrants deference by this Court and the Court adopts this determination. *See GHASP*, 289 Fed.Appx. at 749.

The EPA has also determined that the USOR's response costs under the Removal Action AOC, AOI-1 RI/FS AOC and Second Removal Action AOC are consistent with the National Contingency Plan. Unlike voluntary response actions, where the burden of demonstrating consistency with the NCP is on a plaintiff, "[w]here a private party is cleaning up a site pursuant to an administrative order . . . or . . . a consent order . . ., the regulations establish an irrebuttable presumption that the private party's actions were consistent with the NCP." *See, e.g.*, *Aviall Services, Inc. v. Cooper Indus., LLC*, 572 F. Supp. 2d 676, 695 (N.D. Tex. 2008), *see, also, Morrison Enters. v. McShares, Inc.*, 302 F.3d 1127, 1137 (10th Cir. 2002).

Regarding the question of "disposal" or "treatment," CERCLA Section 101(29) defines "disposal" and "treatment" as they are defined under the Resource Conservation Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 *et seq*. *See* 42 U.S.C. § 9601(29). RCRA defines "disposal" broadly to mean:

> the discharge, deposit, injection, dumping, spilling, leaking, or placing of any *solid waste* or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3) (emphasis added). In turn, the RCRA defines "solid waste" broadly as:

> garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including sold, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities .

. . .

42 U.S.C. § 6903(27).  Further, the RCRA defines "treatment to mean:

> The term "treatment," when used in connection with hazardous waste, means any method, technique, or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume. Such term includes any activity or processing designed to change the physical form or chemical composition of hazardous waste so as to render it nonhazardous.

42 U.S.C. § 6903(34).

Taking the USOR's proffers of EPA rulings as true, the Court determines that the USOR Site was engaged in treatment and disposal operations.  This fact is also a matter of public record subject to judicial notice as it is "generally known within the territorial jurisdiction" of this Court and "capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned." *See Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

CERCLA does not define "arranged for," but the Supreme Court has given the term its "ordinary meaning," and held that an "arranger" is one who "takes intentional steps to dispose of a hazardous substance." *MEMC Pasadena, Inc. v. Goodgames Indus. Solutions*, LLC, 143 F. Supp. 3d 570, 578 (S.D. Tex. 2015) (citing *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 499, 611 (2009)). Where the evidence shows that an entity arranges for another, collects and "haul away" its "grit" waste, and chooses an USOR Site as the "Disposal Site" for its waste, it cannot be disputed that this act constitutes an "arrangement" under CERCLA and federal precedent.

"Hazardous substances" are identified in EPA's Designation of Hazardous Substances regulation implementing CERCLA, at 40 CFR 302.4. The USOR has submitted the affidavit of Dr. Kirk W. Brown, a former professor at Texas A&M University, in support of its contentions that waste streams attributed to the defendants contained "hazardous substances" as that term is defined under CERCLA. Dr. Brown credentials are not challenged. Hence, he is an expert capable of opining whether a particular party's waste stream contains hazardous substances, thereby triggering CERCLA liability. The Court finds that he relie[s] on the methodology and data typically used and accepted in these cases . . . and his testimony is, therefore, admissible." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–95 (1993).

In this case, the USOR relies on Dr. Brown's expert opinions to demonstrate that the waste streams associated with certain defendants' waste such as dirt, oil, oily sludge grease and road tar, as well as corrosion inhibitors, spot removers, degreasing compounds, tar removers and solvents, contained hazardous substances that triggered CERCLA liability. Based on the

evidence and his opinion, there is no genuine dispute that these waste contained CERCLA hazardous substances. *See* [Findings of Facts (Dkt. No. 1429, Fact 17)].

The USOR has no obligation to prove that certain hazardous substances, attributable to a defendant, are the same hazardous substances currently being released or threatened to be released at the facility, or that the hazardous substances attributable to a defendant exceed a particular contaminant threshold. *See, Uniroyal Chemical Co., Inc.*, 160 F.3d at 242–43; *Halliburton Energy Servs., Inc. v. NL Indus.*, 648 F. Supp. 2d 840, 848 (S.D. Tex. 2009) ("Because CERCLA imposes strict liability, a plaintiff generally does not need to prove that the defendant caused the contamination, only that the defendant is a 'covered person.'") (citing *OHM Remediation Servs. v. Evans Cooperage Co., Inc.*, 116 F.3d 1574, 1578 (5th Cir. 1997). It is enough that for substance to be determined, a substance is on one or more of the lists identified at 42 U.S.C. § 9601(14), for substance to be determined a hazardous substance, irrespective of the volume or concentration of the substance found at the site in question". *See United States v. Nicolet, Inc.,* 712 F.Supp. 1205, 1207 (E.D. Pa. 1989).

Although the Fifth Circuit Court of Appeals has determined that whether a hazardous substance exceeds "background levels" may be relevant to determining if there was a "release" that caused the incurrence of response costs, *Licciardi v. Murphy Oil U.S.A., Inc.,* 111 F.3d 396, 398-99 (5th Cir. 1997), this is irrelevant to the liability of a "covered person." *See Asarco LLC*, 21 F.Supp. 3d at 803 ("[T]he only causation required under CERCLA is that the release of hazardous substances at the 'facility' cause the response costs; a plaintiff does not need to prove that the defendant's waste caused the response costs." (internal citations omitted).

### B.   *State Law Standards TCEQ Findings*

To recover costs under state law, specifically, Section 361.344 of the TSWDA, the USOR must establish that: (1) TCEQ has approved the response action; (2) the response action is

necessary to address a release or threatened release of solid waste; (3) the costs of the action are reasonable and necessary; (4) the defendant is a "person responsible for solid waste" as defined in § 361.271; and, (5) the USOR made reasonable attempts to notify the defendant(s) of the release and its intent to take steps to eliminate the release. *See* TEX. HEALTH & SAFETY CODE ANN. § 361.344; *e.g.*, *see also R.R. Street & Co., Inc. v. Pilgrim Enters., Inc.*, 166 S.W.3d 232, 240 (Tex. 2005).

TCEQ has been involved in the response actions at the USOR Site in various respects. By letter dated August 4, 2016, TCEQ formally "acknowledge[d] EPA's approval of the USOR's response actions and, for the purposes of Texas Health and Safety Code § 361.344, the TCEQ approve[d] the USOR Site's response actions."

The TSWDA definition of "release" is almost identical to that of CERCLA. *Compare* TEX. HEALTH & SAFETY CODE ANN. § 361.003(28) *with* 42 U.S.C. § 9601(22). The distinctions are without a difference in this case as is evident by the following: (a) both the EPA and TCEQ have determined that there has determined there has been a release or threatened release as defined by CERCLA, and the TSWDA. *See* [Finding of Facts Dkt. No. 1429]; and (b) the EPA and the TCEQ have determined that the USOR Site PRP Group's response activities are necessary to address the release or threatened release. *See Id.* Like the EPA determinations on this subject, the TCEQ determinations warrant deference by this Court.

It follows that if the USOR's response costs were incurred in response to a release, and the costs were necessary to address the release, then the costs were "reasonable and necessary" under § 361.344. Therefore, the EPA and TCEQ's approval of the USOR's response activities and determinations that the USOR's response activities are necessary, are also an affirmation that the USOR's costs are reasonable and necessary. Further, any dispute concerning the USOR's costs, as to reasonableness, is a question for the Court to determine in apportioning response costs among

liable parties. *See* TEX. HEALTH & SAFETY CODE ANN. § 361.344. *See also,* TEX. HEALTH & SAFETY CODE ANN. § 361.343(c) (noting apportionment of costs only affects rights of parties to cost recovery actions as against each other and does not affect liability).

Like CERCLA, the TSWDA defines "persons responsible for solid waste" to include a person that:

> (3) by contract, agreement, or otherwise, arranged to process, store, or dispose of, or arranged with a transporter for transport to process, store, or dispose of, solid waste owned or possessed by the person, by any other person or entity at:
>
> (A) the solid waste facility owned or operated by another person or entity that contains the solid waste; or
>
> (B) the site to which the solid waste was transported that contains the solid waste .
>
> . . .

TEX. HEALTH & SAFETY CODE ANN § 361.271(a)(3). Thus, the Court need not repeat the standard of proof simply because state law is involved. It is sufficient to say, based on the record before the Court, that a finding under CERCLA concerning "person,"[8] "arranger" or "transporter" of "solid waste" by EPA at the USOR Site, satisfies a necessary finding under the TSWDA.

Regarding "processing, storage or disposal," the TSWDA defines "processing," in relevant part, as "the extraction of materials from or the transfer, volume reduction, conversion to energy, or other separation and preparation of solid waste for reuse or disposal . . . ." TEX. HEALTH & SAFETY CODE ANN. § 361.003(25). "Storage" is defined as "the temporary holding of solid waste, after which the solid waste is processed, disposed of, or stored elsewhere." *Id*. § 361.003(38). "Disposal" is defined broadly, to mean "discharging, depositing, injecting,

---

[8] Under Texas law a "person" is defined as "an individual, corporation, organization, government or governmental subdivision or agency, business trust, partnership, association, or any other legal entity." TEX. HEALTH & SAFETY CODE ANN. § 361.003(23).

dumping, spilling, leaking, or placing of solid waste or hazardous waste . . . into or on land or water . . . ." *Id*. § 361.003(7). And,, "solid waste" is defined in relevant part as:

> garbage, rubbish, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility, and other discarded material, including solid, liquid semisolid, or contained gaseous material resulting from industrial, municipal, commercial, mining, and agricultural operations and from community and institutional activities. The term:
>
> (A) does not include:
> (i) solid or dissolved material in domestic sewage ...
> (B) does include hazardous substances . . . .

*Id.* § 361.003(34) and (35). As noted the definition of "solid waste" specifically includes, but is not limited to, hazardous substances. *See Id. see also* TEX. HEALTH & SAFETY CODE ANN. § 361.003(34) and (35); and *Zumwalt v. City of San Antonio*, No. 03-11-00301-CV, 2012 WL 1810962, at •6 (Tex. App. May 17, 2012). Consequently, the Court concludes that the TSWDA imposes the same or broader liability upon "persons responsible for the disposal of solid waste" as CERCLA upon "covered persons."

## VI. CONCLUSION

After considering the voluminous record from the administrative proceedings and hearings conducted concerning the USOR Site, the absence of disputed facts, and giving deference to the EPA's finding of fact [adopted by the Court], the Court determines that the following facts are undisputed and establishes the USOR's case on the issue of liability:

a) the USOR Site is a facility as defined by § 101(9) of CERCLA and § 361.003(28) of the TSWDA;

b) the USOR Site has released and/or threatens a release of hazardous substance as defined by 42 U.S.C. § 9601(22);

c) the USOR Site has engaged in treatment and disposal operations concerning hazardous substances, as defined under the RCRA, 42 U.S.C. §§ 6901 et. seq.; 42 U.S.C. § 9601(29) and CERCLA § 101(29);

d) the evidence is undisputed and conclusive that certain entities have arranged for and served as arrangers for entities that have used the USOR Site as a disposal site for hazardous substances as defined by CERCLA 40 CFR 302.4 and heretofore cited case law;

e) there is no dispute that the waste streams associated with the USOR Site contained CERCLA hazardous substances; and

f) the Court determines that response costs consistent with the NCP, and recovery costs under state law, have become necessary and will likely continue at the USOR Site. Therefore response and recovery costs are appropriate and necessary under TSWDA, § 361.344 and current case law, to address the release or threatened release of solid or hazardous waste from the USOR Site.

The Court HOLDS that the evidence is undisputed and CONCLUSIVE that the U. S. Oil Recovery Superfund Site and the MCC Recycling Facility at 200 N. Richey and 400 N. Richey in Pasadena, Texas have suffered environmental contamination in violation of federal and state law.

It is so ORDERED.

SIGNED on this 7th day of April, 2017.

_____
Kenneth M. Hoyt
United States District Judge