UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| USOR SITE PRP GROUP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-2441 |
| | § | |
| A&M CONTRACTORS, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ON PARTIAL SUMMARY JUDGMENTS
## [NAMED DEFENDANTS]

**I.      INTRODUCTION**

Before the Court are the several motions for partial summary judgment by the plaintiff, USOR Site PROP Group ("USOR"), against Arranger defendants: AAR Inc. ("AAR"); Angelica Textile Services, Inc. ("Angelica Textile"), Berg Environmental Services, Inc. ("Berg Environmental"), Cole Chemical & Distributing Inc. ("Cole Chemical"), Flex Oil Service, LLC ("Flex Oil"), REM Research Group, Inc. ("REM Research"), Sunbelt Steel Texas, Inc. ("Sunbelt Steel"), Taylor Press Products Co. ("Taylor Press"), United Environmental Services, LLC ("UES"), and Western Oilfields Supply Co. d/b/a Rain for Rent ("Rain for Rent").

The transporter defendants in this Memorandum include: Berg Environmental, E-Transport Carriers, Inc. ("E-Transport"), Firebird Bulk Carriers, Inc. ("Firebird"), K-3 Resources, L.P. d/b/a K-3BMI ("K-3BMI"), Pulido Trucking, LP ("Pulido Trucking"), Texas Water Management LLC ("Texas Water Management"), and United Environmental Services, LLC ("UES"). Concerning the transporters defendants, USOR seeks to establish that each transported waste to the U.S. Oil Recovery Superfund Site ("USOR Site") and that the waste

contained hazardous substances, as defined by CERCLA, and solid waste as defined by TSWDA.

## II. SUMMARY OF PREVIOUS FINDINGS AND CONCLUSIONS

Previously the Court filed its Memorandum Opinion determining that the USOR Site contains both hazardous waste and solid waste as defined by CERCLA and the TSWDA. *See* [Memorandum Opinion and Order, DE #3890]. Suffice it to say that the summary of those findings and conclusions entered there are sufficient for summary judgments to be entered against those determined to be arrangers and transporters.

After considering the voluminous record on file concerning the administrative proceedings and hearings conducted concerning the USOR Site, the absence of disputed facts, and giving deference to the EPA's finding of fact adopted by the Court [DE# 3890], the Court determines that the following additional facts are undisputed and establishes that the USOR's Site suffered environmental contamination in violation of federal and state law:

- a) the USOR Site is a facility as defined by § 101(9) of CERCLA and § 361.003(28) of the TSWDA;

- b) the USOR Site has released and/or threatens a release of hazardous substance as defined by 42 U.S.C. § 9601(22);

- c) the USOR Site has engaged in treatment and disposal operations concerning hazardous substances, as defined under the RCRA, 42 U.S.C. §§ 6901 et. seq.; 42 U.S.C. § 9601(29) and CERCLA § 101(29);

- d) the evidence is undisputed and conclusive that certain entities have arranged for and served as arrangers for entities that have used the USOR Site as a disposal site for hazardous substances as defined by CERCLA 40 CFR 302.4 and heretofore cited case law;

- e) there is no dispute that the waste streams associated with the USOR Site contained CERCLA hazardous substances; and

- f) the Court determines that response costs consistent with the NCP, and recovery costs under state law, have become necessary and will likely continue at the USOR Site. Therefore response and recovery costs are appropriate and necessary under TSWDA, § 361.344 and current case law, to address the release or threatened release of solid or hazardous waste from the USOR Site.

The Court HOLDS that the evidence is undisputed and CONCLUSIVE that the U. S. Oil Recovery Superfund Site and the MCC Recycling Facility at 200 N. Richey and 400 N. Richey in Pasadena, Texas have suffered environmental contamination in violation of federal and state law. Hence, there is no genuine disputed fact that the USOR Site is a "facility", that there has been a "release" of hazardous substances or waste as defined by CERCLA, that response costs have been incurred and will continue, that the incurrence of response costs are necessary and consistent with the National Contingency Plan for removal costs, that certain entities, companies or businesses arranged for the disposal and/or treatment of hazardous substances and solid waste, as defined by CERCLA; *See* [42 U.S.C. § 9607(a)] RCRA, 42 U.S.C. §§ 6901 *et. seq.* and 9601(29); *see also* TSWDA §§ 361.003(28); 361.343(c), 361.271(a)(3) and (a)(4).

The Court will address each defendant's response/contention concerning whether each fits within the definition of arranger or transporter, has caused or engaged in the transport of hazardous waste to the USOR Site and is thereby liable for response costs.

## III. CONTENTIONS AND CLAIMS OF THE PARTIES

USOR contends that AAR, Angelica Textile, Berg Environmental, Cole Chemical, REM Research, Southern Core and Sunbelt Steel, Flex Oil, Taylor Press, UES, and Rain for Rent are legal entities and are "Arrangers" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and § 361.003(23) of the TSWDA. In this regard, the evidence is undisputed.

Therefore, these defendants are complicit in having hazardous substances and/or solid waste delivered to the USOR Site and are liable for responsive costs.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be GRANTED. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."  Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377,

380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## V. DISCUSSION AND ANALYSIS – ARRANGERS

### A. *Claims Against AAR*

In its response, AAR objects to a USOR's invoice evidence that contains its name. AAR contends that the invoice is hearsay under FRE 802, and that the evidence offered by USOR in support of the invoice is not authenticated. Moreover, AAR contends, the expert opinion offered by USOR's expert is contrary to published materials, is without any supporting basis, and is based on speculation.

The Court rejects AAR's unsupported claims that the invoice that identifies AAR does not properly identify it as an arranger simply due to the absence of other or additional identifying information such as AAR's address, telephone number and the like. As well, the Court rejects AAR's unsupported contention that USOR's expert lacks knowledge and experience with construction and demolition materials and fails to cite or refer to any tests or studies of what is contained in the groundwater runoff at construction sites that supports his opinion. Hence, AAR argues that the expert's opinion is based on speculation.

A review of the evidence provided by USOR establishes the inference and conclusion that Robert Childs, in behalf of Everready Environment, transported to the USSOR Site a quantity of oily water from AAR on June 3, 2004. This conclusion is supported by the USOR Site records. Therefore AAR's argument that USOR failed to include sufficient identifying information concerning the source of the waste is rejected. The Court also overrules AAR's objections to requests for admission numbers 15 – 27 the objections are not supported by any

proffer made by AAR that contradicts USOR's factual claim or any expert evidence that challenges USOR's expert reports. *See* [Doc. # 3188, pp.14-18]. Finally, the Court is of the opinion that AAR's response to the USOR Site records is simply a confession that it has no evidence to admit or deny the truth of USOR's claims.

Therefore, the Court concludes that AAR is an arranger and that its waste streams contained hazardous waste, as found in USOR Site records as follows: acetone, benzene, toluene, xylene, methyl, ethyl ketone, lead and zinc. Moreover, AAR's waste streams contributed to the hazardous substances present at the USOR Site for which there is no genuine factual dispute. Hence, partial summary judgment is GRANTED in behalf of USOR and it is therefore entitled to collect response costs from AAR.

USOR contends that Angelica Textile arranged with Earth America for the transport of Angelica Textiles waste to the USOR Site. Therefore, the USOR moves for partial summary judgment against Angelica Textiles. The Court determines that Angelica has filed for bankruptcy. Therefore, USOR's claims against Angelica Textiles are STAYED.

The Court also finds that USOR's motion for partial summary judgment is against Cedarwood Development is Moot. USOR's suit against Cedarwood Development was terminated by Order on February 9, 2017.

### B. *Claims Against Berg Environmental*

USOR alleges that Berg Environmental is liable to answer for response costs as both an "arranger" and a "transporter". *See* [USOR Third Amended Complaint, para. 265-68]. In this regard, USOR asserts that Berg Environmental: (a) arranged and transported waste for Taylor Press to the USOR Site; and (b) arranged and transported waste for disposal and treatment for Lonestar Fasteners to the USOR Site.

USOR contends that Berg Environmental engaged Triad Transport in this endeavor to transport waste to the USOR Site. USOR contends that Taylor Press waste streams contained hazardous waste substances such as acetone, barium, benzene, chromium, copper, dichloroethylene, ethylbenzene, hydrofluoric acid, methyl ethyl ketone, lead, methylene chloride, nickel, perchloroethylene, toluene, trichloroethan, trichloroethylene, xylenes and zinc. Therefore, USOR argues that there is no genuine dispute that Berg Environmental arranged and transported hazardous waste to the USOR Site in violation of CERCLA that was generated by Lonestar Fasteners and Taylor Press. Therefore, USOR asserts that it is entitled to a motion for partial summary judgment. [The Court need not address the liability, if any, of Lonestar Fasteners here.]

Berg Environmental argues the contrary. It argues that USOR has no evidence: (a) demonstrating that the waste that it arranged for transport contained hazardous substances, or was of the nature found at the USOR Site; (b) that Berg Environmental qualifies as a "responsible person" under CERCLA or TSWDA; and (c) disputing that CERCLA Sections 107(a) and 113(f) are mutually exclusive and, as a matter of law, that USOR is precluded from asserting CERCLA Section 107(a) claims in this case.

In support of its claim against Berg Environmental, USOR has established, without factual dispute, that the USOR Site in question is a "facility" as defined in 42 U.S.C. § 9601(9); that a release or threatened release of a hazardous substance has occurred; and that the release or threatened release has required that USOR incur response costs. *See* [DE# 3890]. Berg Environmental does not dispute that it arranged and transported waste materials to the USOR Site and the Court finds that it, in fact, did make such deliveries. Therefore, the question that remains is whether Berg Environmental is a "responsible person" under state and federal law.

*See Id.* The Court finds and holds that Berg Environmental is a responsible person under CERCLA § 107(a) and state law.

The undisputed evidence shows that Berg Environmental accepted for transport and arranged for transport hazardous substance for disposal at the USOR Site. *See* Exhibits A and B [DE#s 1429(1) and (2) and 1430]. The waste streams sent to the USOR Site included arsenic, barium, iron, mercury among other substances that fall within CERCLA definition of hazardous substances. *See* [DE# 27595 at para. 266]; *see also* Exh. G and [DE# 3286]. A "covered or responsible person" is one who by agreement arranges to process, store or dispose of solid waste whether owned or possessed by other persons, that accepts solid waste for transport and in fact transports itself, or by other persons, solid waste to a site such as the USOR Site. *See* Tex. Health & Safety Code. Ann. § 361.271(a)(3) and (a)(4). Hence, the Court concludes that Berg Environmental is a "responsible person" under CERCLA and the TSWDA.

Based on the foregoing, therefore, the Court concludes that there is no genuine dispute that prevents the Court from granting USOR's motion for partial summary judgment and denying any claim(s) by Berg Environmental to the contrary. *See Rogers v. Bromac Title Services, LLC,* 755 F.3d 347 (5th Cir. 2014); *see also* Fed. R. Civ. P. 56(c). The Court GRANTS partial summary judgment in behalf of USOR against Berg Environmental, and DENIES Berg Environmental's motion(s) to the contrary.

### C. *Claims Against Cole Distribution*

Before the Court is USOR's motion for partial summary judgment [DE#3186-2] wherein it alleges that Cole Distribution generated solid waste from its industrial and chemical activities in violation of § 361.003(04) of the TSWDA. USOR alleges that Cole Distribution arranged with Goodgames Industrial Solutions and/or Bealine Services to transport for disposal or

treatment of certain waste to the USOR Site for treatment.  *See* [USOR Site Records, Bates Nos. USOR-13202514, USOR-132-0202508-09].

Cole Chemical & Distributing, Inc., ("Cole Chemical") is named as a successor to Cole Distribution by USOR and, according to USOR was the chemical distribution operation of Cole Chemical.  The Court does not need to address the liability of Cole Chemical at this time.  The evidence is undisputed that Cole Distribution operated a warehouse facility where it blended and packaged various chemicals and related products during the relevant period until 2004.

It is undisputed that Cole Distribution owed or possessed hazardous substances and either arranged for disposal or treatment and disposal of those hazardous substances.  *See* CERCLA § 107(a)(3); *see also* Exhibits A and B [DE#s 1429(1) and (2)]; Exhibit G [DE# 1431-4].  The evidence also supports the conclusion that, while Cole Distribution "may" have been a separate entity apart from Cole Chemical.  Nevertheless, it has a strong affiliation with Cole Chemical and "may have" disposed of hazardous substances and solid waste in behalf of Cole Chemical.  Therefore, the question of Cole Chemical's liability is not resolved by USOR's motion for summary judgment.  Liability is yet to be determined.

Therefore, the Court determines that Cole Distribution was, in fact, an "arranger" and utilized Goodgames Industrial Solutions and/or Bealine Services to treat or dispose of its hazardous waste.  Hence, USOR's motion for partial summary judgment against Cole Distribution is GRANTED.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### D.     *Claims Against Flex Oil*

Before the Court is the motion for partial summary judgment of USOR [DE# 3186-2]. USOR contends that Flex Oil both, arranged and transported hazardous substances to the USOR Site, which substances are defined by CERCLA as hazardous waste.  Because the waste was

generated from industrial and commercial operations, it is also defined as "solid waste", pursuant to TSWDA. *See* Tex. Health & Safety Code Ann. § 361.003 (34) and (35).

USOR asserts that Flex Oil's disposal contained the following hazardous substances: acetone, benzene, ethyl benzene, toluene, xylene, methyl ethyl ketone, chromium, lead and zinc. Flex Oil does not dispute that it disposed of "non-hazardous" waste that contained waste oil. It also admits that the USOR is a "facility" within the meaning of CERCLA and that the USOR Site suffered a "release" thereby incurring response costs. Nevertheless, it disputes that its waste was hazardous or solid within the statutory definitions.

The undisputed evidence shows that the waste generated and transported from the Flex Oil storage facility was composed of an array of oil wastes as well as storm water runoff. Without doubt the waste is properly defined as hazardous substances and "solid waste" generated from Flex Oil's industrial and commercial activities. *See* [Brown Affidavit, DE# 3187-5 at paras. 100-108].

Flex Oil's waste also contained "hazardous substances", a subcategory of solid waste. *See* [42 U.S.C. § 9601(14)]. Flex Oil's admissions of facts, coupled with the expert testimony of Dr. Brown, stand without scientific or evidentiary dispute. Therefore, the Court concludes that Flex Oil's waste constituted both hazardous substances under CERCLA and solid waste under the TSWDA. Flex Oil is regulated as a petroleum storage and terminal storage facility and as a used oil handler. Moreover, the discovery concerning the operations of Flex Oil confirms Dr. Brown's opinion and the undisputed evidence that supports the Court's conclusions. Therefore, USOR's motion for summary judgment is GRANTED.

### E. Claims Against REM Research

In its motion for summary judgment and reply [DE#s 3201, 3759], the defendant, REM Research, Inc. ["REM"] asserts that it is entitled to summary judgment because: (a) there is no evidence that any hazardous substances resulting from REM's operations was actually delivered to the USOR Site and caused USOR to incur response costs. USOR has filed a cross-motion for summary judgement and a response disputing REM's contentions [DE#s 3188 and 3362]. In its motion for partial summary judgment, USOR asserts that REM is liable as an "arranger" under the TSWDA. REM does not dispute that it arranged for certain hazardous substances/materials to be removed and disposed. Therefore, whether REM is an arranger, pursuant to CERCLA, depends on whether a transporter deposited REM's waste at the USOR Site and, whether the materials were hazardous by CERCLA and TSWDA standards.

REM arguments that it was careful to employ US Waste, the national leader in "complete turnkey waste system management" and that its waste profile failed to show that hazardous waste was contained in its waste streams, misses the point. Case law establishes that while a waste stream may be nonhazardous waste under RCRA, that fact does not negate a finding that the same stream contains hazardous substances. *See Uniroyal Chemical Co., Inc. v. Deltech Corp.*, 160 F.3d 238, 244 (5th Cir. 1998); *see also* [DE# 3187-5]. The definition of hazardous substances includes but is not limited to RCRA's listed hazardous waste. *Id.* at 9601(14)(c).

REM admits that it used US Waste to remove and dispose of its waste stream during the relevant time [DE# 3201, at 3]. The Court finds that these removals were intentional and designed to dispose of hazardous substances. Therefore, REM is an "arranger" within the meaning of CERCLA and TSWDA because its waste stream was hauled to the USOR Site and was found to contain hazardous substances. *See* [USOR, Exhibits A and B [DE#s 1429(1) and

(2)]. *See also Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 499, 611 (2009) *see also Blackmon v. Hansen*, 169 S.W.2d 962-65 (Tex. 1943). The question of allocation is yet to be determined.

The Court determines that USOR's motion for summary judgment should be GRANTED and that REM's motion for summary judgment Denied. Therefore, the Court GRANTS USOR's motion and DENIES REM's motion.

### F. Claims Against Sunbelt Steel

Before the Court are the response of Sunbelt Steel [DE# 3611) to USOR's motion for partial summary judgment of USOR [DE# 3186-2]. USOR contends in its motion that Sunbelt Steel was an "arranger" and arranged for transport for disposal and treatment of its waste at the USOR Site through "transporter", Envoirovac. *See* [Exh. R., Bates Nos. USOR-12003968; USOR-12003969]. USOR attributes the following CERCLA hazardous substances to Sunbelt Steel: acetone, benzene, chromium, cooper, dichloroethylene, ethylbenzene, lead, methyl ethyl ketone, methyl tert-butyl ether, methylene chloride, perchloroethylene, nickel, toluene, trichloroethan, trichloroethylene, xylene, zinc and other unnamed volatile organic and petroleum hydrocarbon compounds. *See* [DE#3187-5, Brown Affidavit paras. 239-250]. Finally, USOR asserts that Sunbelt Steel's waste was generated from industrial and commercial activities, and, therefore is "solid waste" as defined under the TSWDA. *See* Tex. Health & Safety Code Ann. § 361.003(34) and (35).

Sunbelt Steel asserts that: USOR relies on incompetent and inadmissible evidence, unsupported factual conclusions, particularly concerning whether there was a release and threatened release, or that Sunbelt Steel delivered or arranged the delivery of hazardous substance to the USOR Site and, whether "Sunbelt Steel's alleged waste contained hazardous

substances. "Sunbelt Steel also objects to USOR's exhibits particularly USOR's expert witness Dr. Kirk W. Brown.

The Court is of the opinion that, despite Sunbelt Steel's protestations concerning the cogency of USOR's evidence and arguments, the undisputed evidence establishes that Sunbelt Steel is liable as an "arranger" for disposal and treatment of its waste at the USOR Site.

Sunbelt Steel is registered as an industrial waste generator operating a metal fabrication shop and warehousing facility. There, it processes metal that requires cutting, grinding, turning, honing, milling, deep hole drilling and heat treating all of which result in waste streams because of the use of cutting oils, fluids, solvents, degreasers, wastewater and sludge. *See* [DE# 3185-5, paras. 239-250]. In 2004, Sunbelt Steel entered into the TREQ Voluntary Clean-Up Program at which time contaminants such as described herein were identified. Therefore, there is no genuine dispute that Sunbelt Steel's waste contained both "solid waste" and "hazardous substances" as defined by CERCLA and the TSWDA. Based on the foregoing, the Court GRANTS USOR's motion for partial summary judgment.

  **G.**   ***Claims Against Taylor Press*** – In its motion and amended motion for summary judgment [DE#s 3235 and 3257]. Taylor Press asserts three defenses to USOR's suit and USOR's motion for partial summary judgment [DE# 3186-2]. Taylor Press asserts: (1) that it has not ever generated any of the substances asserted in USOR's amended petition as hazardous substance, and none has been found in its waste; (2) that all of the evidence presented by USOR is limited to chemicals and/or hazardous substances that USOR has fail to plead were found at the USOR Site; and (3) that its waste does not contain the chemicals alleged as volative, and do not constitute hazardous substances as defined by CERCLA.

In support of its contentions, Taylor Press submitted declarations of Bradford Werner, Victoria Richards Hawkins, Jacob Scher, and Russell Carr. USOR, disputing Taylor Press' position, proffered the affidavit of Dr. Kirk Brown. *See* [DE# 3187-5]. Having reviewed the competing motions and attachments, the Court determines that Taylor Press' motion(s) should be denied and USOR's motion should be GRANTED because Taylor Press' declarations fail to address the relevant issue before the Court.

Whether based on confusion or lack of understanding concerning the law and the content of its disposals, Taylor Press' motion and defenses misses the mark. Both in its answer to USOR's suit, and the declaration of Dr. Victoria Richards Harkins admit that Taylor Press' wastewater contained hazardous substances. Dr. Harkins identified at least five hazardous substances that were detected in Taylor Press' wastewater also found at the USOR Site. Taylor Press simply argues that to the extent any hazardous substances were detected in its waste streams the content was "less than the reporting limits" [DE# 3647-1 at paras. 8, 10]. In this regard, it appears that Taylor Press relies on the reputation of Berg Environmental. The fact that Berg Environmental required its customers, including Taylor Press, to state that its waste streams did not contain hazardous waste, does not dispose of the issue. Nor does it explain why Taylor Press' own expert identified eight hazardous substances in Taylor Press' wastewater which substances were found during a sampling and during disposal [DE# 3647-2]. Therefore, Taylor Press' arguments concerning content and reporting limits fail.

Dr. Brown's study, USOR's expert, found the same hazardous substances at the USOR Site that were identified by Dr. Harkins and even more [DE# 3282]. By its own evidence, Taylor Press demonstrates its liability under CERCLA concerning the content of its waste streams. The

extent of Taylor Press liability concerning contamination is a question of allocation as opposed to liability.

By its admission, Taylor Press is an arranger under CERCLA and TSWDA. *See* [DE# 3257c 17]. The fact that Berg Environmental was the broker between Taylor Press and the transporter who selected the USOR Site as the location for disposal, does not remove Taylor Press from the arranger status. *See* [Statement of Undisputed Fact Nos. 1-15, 72-75, pp. 36-40 and 48]. The competent summary judgment evidence defeats all of Taylor Press' claims against USOR and, by its own admissions, mandate summary judgment in behalf of USOR. *See Rogers v. Bromac Title Svcs, LLC*, 755 F.3d 347, 350 (5th Cir. 2014). Therefore, summary judgment is GRANTED in behalf of USOR and DENIED as to Taylor Press.

### H. Claims Against UES

Before the Court are USOR's motion for partial summary judgment [DE# 3186-2] and the response of UES [ DE# 3599]. In its motion, USOR asserts that UES through its predecessors, ProWaste, Inc., arranged for processing, storage, treatment and/or disposal of a stream of waste at the USOR Site that resulted from operating a recycled materials facility. According to USOR Site records, ProWaste, Inc.'s, operations generated "solid waste" from its industrial and commercial activities through a conditional exemption issued under the TSWDA. The transports that ProWaste handled were waste from Tex-Tube's activities. *See* [Removal Action, AOC Finding of Fact Nos. 82 and 85]; *see also* [DE# 3187-5 para. 382]. Tex-Tube's waste also contained "hazardous substances" as a subcategory of the "solid waste" generated by its industrial or commercial activities all of which, according to USOR, was delivered to the USOR Site for disposal.

UES contends in its response and opposition to USOR's motion that the evidence relied upon is unauthenticated, incompetent and inadmissible, that the affidavit of Dr. Brown is based on assumptions and generalizations, and USOR has not established that UES is the successor to ProWaste or that UES or ProWaste was an arranger or responsible person under U.S.C. § 9607(a).

The evidence is undisputed that ProWaste, Inc., was both an arranger and transporter of solid waste and hazardous substances. Therefore, UES's arguments and the evidence proffered in support of the finding and conclusion that ProWaste, was not an arranger and transporter is not supported by competent summary judgment evidence. *See Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004); *see also* [DE# 3890].

Also, UES's evidence does not dispute or refute that it is in fact the successor to ProWaste. It is not enough for a non-movant to simply argue contrary to a movant's motion for summary judgment where the argument also "implies" that the non-movaant has conclusive evidence on the issue in its hands, yet will not produce it. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). UES has presented no competent evidence that refutes USOR's claim. Hence, USOR's facts and proffers are accepted as true.

Therefore, USOR's motion for partial summary judgment should be and is herewith GRANTED.

### I. *The Claim Against Rain and Rent*

The plaintiff, USOR, has moved for partial summary judgment against Rain and Rent in this case as an arranger. USOR contends that Rain and Rent is "regulated as an industrial machinery and equipment merchant wholesaler and general freight trucking company". It is also

registered as a generator of hazardous waste at its LaPorte, Texas facility where solid and/or hazardous waste are transported or generated. These facts are not disputed by Rain and Rent.

The undisputed evidence shows that Rain and Rent conducts operations that included cleaning and repair of equipment, painting, parts cleaning, degreasing processes and the like. As a result, its waste streams include spent non-halogenated solvents, degreasing compounds all generated from oilfield construction equipment. In 2010 and 2011, emergency response actions were conducted at its facility. During these responses the USEPA and the TCEQ identified acetone, benzene, toluene, xylene and methyl ethyl ketone at the facility.

As a result, the Court concludes that the waste generated at the Rain and Rent facility was hazardous waste. *See* [Document 3187-5, attached to USOR's Motion for Summary Judgment]. Therefore, USOR's motion for partial summary judgment should be and it is hereby GRANTED.

## VI. DISCUSSION AND ANALYSIS – TRANSPORTERS

The USOR also seeks partial summary judgment against E-Transport, Firebird, K-3BMI, Pulido Trucking, and Texas Waste Management as transporters of waste to the USOR Site for disposal or treatment. The following facts are undisputed as to the transporter defendants identified in USOR Site records and they show that the defendants transported materials/waste to the USOR Site for treatment or disposal;

> a) According to TCEQ Central Registry, E-Transport transported waste that included an aqueous solution of ethylene glycol with other toxic organic chemicals. The waste was generated from industrial activities and is classified as solid waste by TSWDA and hazardous waste by CERCLA standards [DE# 3187-5]. The stream of waste contained some or all of the following: chromium, copper, lead, nickel, zinc, ethylene glycol and other toxic organic compounds that constitute hazardous substances under CERCLA.
>
> b) The evidence also shows that Firebird transported waste for treatment to the USOR Site for treatment or disposal for several companies that generated hazardous waste. One of such

companies was Pilot Industries of Houston and Contractor Technology. The evidence shows at least that some of Pilot's waste was RCRA hazardous waste, meaning it was classified as *per se* hazardous substance according to CERCLA regulations. Therefore, the waste transported by Firebird contained hazardous substances and included substances such as: arsenic, cadmium, lead and zinc. Firebird's transports also included waste classified as solid waste according to the TSWDA.

c) K-3BMI also transported hazardous waste materials to the USOR Site for several generators of waste materials to include Bolivar Barge Cleaning Services, LLC and Tex-Tube Company. The Bolivar operation involved machining and metal working, cleaning and degreasing, surface preparation, painting and the like. CERCLA hazard substances include such chemicals as acetone, benzene, chromium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, xylene and zinc, all of which was detectable in the waste stream transported to the USOR Site by K-3BMI. In the waste stream transported in behalf of Tex-Tube Co., the evidence shows that Tex-Tube, Co., engage in metalworking that required cutting, grinding, turning, degreasing and surface preparation, all with regard to metals. As a result, the waste stream included arsenic, barium, cadmium, chromium, lead, mercury, selenium, benzene, 1,4-dichlorobenzene, methylene chloride, methyl ethyl ketone, nitrobenzene, tetrachloroethylene and trichloroethylene. The waste is also classified as solid waste and are declare such by the TSWDA. Hence, the Court holds that K-3BMI transported hazardous substances and solid waste to the USOR Site.

d) The evidence shows that Palido Trucking transported waste to the USOR Site for treatment or disposal for Houston International Terminal and Texas Industrial Box. These companies, the evidence shows, were engaged in commercial and industrial that of necessity would generate hazardous waste. The Court finds that Pulido Trucking transported solid waste, as defined by the TSWDA, and hazardous waste, as defined under CERCLA regulations to the USOR Site.

e) Texas Waste Management transported hazardous waste to the USOR Site. The evidence reflects that the waste streams in behalf of its own operations and that of Pick-A-Part and Saw Pipes, were generated from commercial or industrial activities, generated solid waste as defined by the TSWDA, and hazardous substances as defined under CERCLA regulations. Part of the waste stream is

also determined to be RCRA hazardous waste and is, therefore, classified as *per se* solid waste and constitutes CERCLA hazardous substances. Therefore, the Court finds that Texas Waste Management transported substances that contained hazardous and solid waste to the USOR Site.

## VII. CONCLUSION

The expert witness' testimony associated with these arranger and transporter claims are not refuted. It demonstrates that the waste streams associated with the defendants contained hazardous substances and solid waste that trigger CERCLA liability and/or liability under TCEQ, TSWDA and the Texas Health & Safety Code. After considering all of the evidence and any proffered by the defendants, the Court determines that its earlier findings and conclusions [DE# 3890], based on either undisputed evidence or inconsequential arguments, and those contained herein, support partial summary judgment for the USOR Site PRP Group.

It is, therefore, ORDERED that the USOR Site PRP Group's motion for partial summary judgment as to each of these arrangers and transporters be and it is hereby GRANTED.

SIGNED on this 28th day of June, 2017.

Kenneth M. Hoyt
United States District Judge