UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| USOR SITE PRP GROUP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-2441 |
| | § | |
| BEALINE SERVICE CO., INC.., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**I.     INTRODUCTION**

Before the Court is the defendant, Bealine Service Co., Inc. ("Bealine") motion for summary judgment filed against the plaintiff, USOR Site PRP Group ("USOR")[1]. The Court notes that it has issued an omnibus memorandum opinion identifying and discussing undisputed facts and as well, the rudiments of the applicable law, associated solely with the issue of liability under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA") and the Texas Solid Waste Disposal Act ("TSDWA"). *See* [DE# 3890]. With that memorandum opinion in place and the issue of general liability resolved, the Court will hereafter addresses Bealine's motion for summary judgment [DE# 3264].

**II.    JURISDICTIONAL BASES**

This suit was filed by USOR to collect response costs and expenses due to alleged environmental contamination at the U. S. Oil Recovery Superfund Site ("USOR Site") and the MCC Recycling Facility located at 200 N. Richey and 400 N. Richey in Pasadena, Texas respectively. On August 14, 2014, the USOR filed this complaint against hundreds of defendants asserting that they are collectively responsible, under federal and state law, for response costs

---

[1] The Court adopts the USOR Statement of Undisputed Material Facts, found in its several motions for summary judgment that includes attached exhibits, in reaching its conclusion on the issue of liability.

and expenses associated with remediating environmental contamination at the identified USOR Sites.

Since the original complaint was filed, the USOR has amended its suit on two occasions, the last on August 1, 2016. The USOR seeks contribution, cost recovery that has occurred or will occur, and declaratory relief under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and cost recovery under the Texas Solid Waste Disposal Act ("TSWDA"). *See* [42 U.S.C. §§ 9601 *et. seq.*; Tex. Health & Safety Code Ann. §§ 361.001 *et. seq.*, respectively]. This Court has jurisdiction to entertain the issues raised by the USOR under both CERCLA and TSWDA.

### III.   HISTORICAL BACKGROUND INCLUDING ADMINISTRATIVE RECORD

The USOR consists of firms, corporations, associations, and/or partnerships. The EPA has determined that the members of the USOR are "persons" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21). *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "c," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC Conclusions of Law and Determinations ¶ 28 (Dkt. No. 1429-2, at 8)]; and, (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 23 (Dkt. No. 3187-1, at 6)]. Likewise, TCEQ has determined that the members of the USOR are "persons" as defined by Section 361.003(23) of the TSWDA for purposes of USOR's action under Section 361.344 of the TSWDA, TEX. HEALTH & SAFETY CODE ANN. § 361.003(23). *See* [TCEQ Approval Letter (Dkt. No. 3187-3)].

The members of the USOR are respondents to Removal Action AOC, AOI-1 RI/FS AOC, and Second Removal Action AOC. The USOR is conducting response activities at the USOR Site. *See generally* (a) [Removal Action AOC (Dkt. No. 1429-1)]; (b) [AOI-1 RI/FS AOC

(Dkt. Nos. 1429-1 and 1429-2)]; (c) [Second Removal Action AOC (Dkt. Nos. 3187-1 and 3187-2)]; and, (d) [TCEQ Approval Letter (Dkt. No. 3187-3)].

The USOR Site consists of approximately 18 acres, located generally at the US Oil Recovery facility at 400 N. Richey Street and the MCC Recycling facility at 200 N. Richey Street in Pasadena, Texas, and EPA has determined the USOR Site is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9). *See* (a) [Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-10-11, effective August 25, 2011 ("Removal Action AOC"), Definition "p." at p.3, Finding of Fact "a." at p.4, and Conclusion of Law and Determination "a." at p.7 (Dkt. No. 1429-1, at 3, 4, 7)][2]; (b) [Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, U.S. EPA Region 6, CERCLA Docket No. 06-03-15 ("AOI-1 RI/FS AOC"), Definition "u." at p.5, Finding of Fact p.6, ¶ 13, and Conclusions of Law and Determinations at p.8, ¶ 25 (Dkt. No. 1429-2, at 5, 6, 8)][3]; and, (c) [Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-11-16 ("Second Removal Action AOC"), at Definition "s." at p.4, Finding of Fact "a." at p.4, and Conclusions of Law and Determinations, at p.6, ¶ 20 (Dkt. No. 3187-1, at 4, 6)].[4]

The USOR Site was an oil processing and waste treatment facility that received and performed pretreatment of municipal and industrial Class I and Class II wastewater, characteristically hazardous waste, used oil and oily sludges, and municipal solid waste. *See* (a) [Removal Action AOC, Findings of Fact "a" and "c" at p.4 (Dkt. No. 1429-1, at 4)]; (b) [AOI-1 RI/FS AOC, Findings of Fact 13 and 15 at p.6 (Dkt. No. 1429-2 at 6)]; and, (c) [Second Removal Action AOC, Findings of Fact ¶ 11 at p.5 (Dkt. No. 3187-1, at 5)]. The EPA has determined that

---

[2] The Removal Action AOC is in the record as Exhibit A (Dkt. No. 1429-1).
[3] The AOI-1 RI/FS AOC is in the record as Exhibit B (Dkt. Nos. 1429-2 and 1430).
[4] The Second Removal Action AOC is in the record as Exhibit A (Dkt. Nos. 3187-1 and 3187-2).

there has been a release or threatened release of hazardous substances from the USOR Site as defined by Section 101(22) of CERCLA, 42 U.S.C. § 9601(22). *See* [(a) Removal Action AOC, Findings of Fact "k." – "r." at p.6, and Conclusion of Law and Determination "b." and "e." at p.7 (Dkt. No. 1429-1, at 6, 7)]; (b) [AOI-1 RI/FS AOC, Conclusions of Law and Determinations ¶¶ 26–27 (Dkt. No. 1429-2, at 8)]; (c) [Second Removal Action AOC, Findings of Fact ¶¶ 12–14, Conclusions of Law and Determinations ¶¶ 21–22 (Dkt. No. 3187-1, at 5–6)]; and (d) [EPA, Designation of Hazardous Substances, 40 CFR § 302.4 (Dkt. No. 1431-4)].[5]

The TCEQ has also determined that there has been a release or threatened release from the USOR Site as defined by Section 361.003(28) of the TSWDA for purposes of USOR's action under Section 361.344 of the TSWDA, TEX. HEALTH & SAFETY CODE ANN. § 361.003(28). *See* [TCEQ Approval Letter (Dkt. No. 3187-3)].[6] Moreover, it has approved the USOR Site PRP Group's response activities as the USOR Site. *See* [TCEQ Approval Letter [Dkt. No. 3187-3)].

The USOR Site PRP Group has incurred and will continue to incur response costs as a result of the release or threatened release of hazardous substances and solid waste at the USOR Site. *See* (a) [Affidavit of Joe Biss dated October 26, 2016 (Dkt. No. 3187-4)][7]; (b) [Removal Action AOC (Dkt. No. 1429-1)]; (c) [AOI-1 RI/FS AOC (Dkt. Nos. 1429-1 and 1429-2)]; (d) [Second Removal Action AOC (Dkt. Nos. 3187-1 and 3187-2)]; and (e) [TCEQ Approval Letter (Dkt. No. 3187-3)].

The EPA has determined that the USOR's response costs are necessary to address the release or threatened release of hazardous substances from the USOR Site. *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "f," p.7 (Dkt. No. 1429-1, at 7)]; (b)

---

[5] The EPA Designation of Hazardous Substances is in the record as Exhibit G (Dkt. No. 1431-4).
[6] The TCEQ Approval Letter is in the record as Exhibit B (Dkt. No. 3187-3).
[7] The Affidavit of Joe Biss is in the record as Exhibit C (Dkt. No. 3187-4).

[AOI-1 RI/FS AOC, Conclusions of Law and Determinations ¶¶ 30–31 (Dkt. No. 1429-2, at 8)]; and (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 25 (Dkt. No. 3187-1, at 6–7)]. As well, TCEQ has determined that the USOR's response costs are necessary to address the release or threatened release of solid waste from the USOR Site. *See* [TCEQ Approval Letter (Dkt. No. 3187-3)]. The EPA has also determined that the USOR's response costs are consistent with the National Contingency Plan ("NCP"). *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "f," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC Conclusions of Law and Determinations ¶ 31 (Dkt. No. 1429-2, at 8)]; (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 25 (Dkt. No. 3187-1, at 6–7)]. The Court adopts the EPA's findings as to response costs necessity and consistency.

## IV.   SUMMARY JUDGMENT STANDARD

Both the USOR and certain defendants have filed motions and/or cross-motions for summary judgment. These motions are not addressed in this Memorandum. However, the law that controls the outcome is set forth hereinafter.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).

Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial." Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

V.   DISCUSSION AND ANALYSIS

In its cross-motion for summary judgment, USOR asserts that Bealine was a "transporter" as defined by CERCLA. Bealine does not dispute that it transported waste to the USOR Site identified in this case. Instead, it seeks to limit its culpability by asserting that it "was a transporter of the materials: nothing more . . . [it played] no part what so every in selecting the delivery site . . ." Hence, the Court finds that Bealine is a transporter of hazardous materials to the USOR Site.

In support of this conclusion, Bealine admits that it transported waste to the USOR Site on behalf of: Alpha Technical Services Corporation, LC; Alvin Chemical Inc.; American Acryl

L.P.; Baker Hughes Oilfield Operations, Inc.; BP Amoco Deer Park; BSMP Inc.; CITGO Petroleum Corp. (CITGO Gasoline Terminal); Cole Chemical & Distributing, Inc. (Cole Distribution Inc.); Dan-Loc Bolt & Gasket Co.; Domco Products Texas Inc.; The Dow Chemical Company (Johann Haltermann, Ltd. and Dow Halterman); Ecolab Inc. (Corsicana Technology); Eagle Construction and Environmental Services, LLC d/b/a SWS Environmental Services; Evans Industries, Inc., as successor to Evans Houston Corp. (Evans Cooperage of Houston); First Wave (New York); Formosa Plastics Corp., U.S.A.; Garner Environmental Services, Inc. (All Chem Service, Inc.); Houston Dynamic Service, Inc.; Houston Independent School District; Houston Marine Services, Inc.; Houston Unlimited, Inc.; HOYER Global (USA), Inc.; Inkjet, Inc.; Intra-Services Inc.; KSolv, LP; KBR, Inc.; KMCO, LLP; LBC Houston, L.P.; Liquid Environmental Solutions of Texas, LLC (US Liquids); Maverick Tube Corp., as successor to Texas Arai Inc.; MEMC Pasadena, Inc.; METTON America, Inc.; Mitsui & Co. (U.S.A.), Inc. (Global Octanes Corp.); National Oilwell Varco LP (Grant Prideco); ONEOK Hydrocarbon Southwest, L.L.C.; Pan-Glo Services, LLC; Pepper-Lawson Construction, L.P.; PLT3 Liabilities Holdings, L.P. f/k/a Oxid, L.P.; RaceTrac Petroleum, Inc.; Sea Lion Technology (SeaLion Chemical); South Atlantic Services, Inc.; Southwest Shipyard, L.P.; The Sun Products Corporation (Huish Detergents); Texas A&M University; Texas Couplings, L.P.; Texas General Land Office; Tidal Tank, Inc.; TPC Group, LLC (Texas Petrochemicals Corp.); Tri-Star Protector Services Co.; TT Barge; United States Steel Corporation (Delta Tubular); VLS Recovery Services; Weatherford U.S., L.P. (P Chem Inc.); West Texas Drum Company; and Westway Terminal Co. LLC.

USOR has also identified the following additional entities for which Bealine transported waste to the USOR Site: AAA Cooper Transportation d/b/a AAA Cooper Transportation, Inc.; Aviana Foods; Control Solutions, Inc.; Clean Harbors San Leon, Inc. f/k/a DuraTherm, Inc.;

Innovene Polyethylene N.A.; Laboratory Corp. of America Holdings; The Meadows Group, LLC; Nalco Co. (f/k/a Ondeo Nalco and successor to Nalco Energy); Pilot Chemical Company; Pilot Industries of Texas; Tasker Manufacturing Corp., Tasker Products Corp. and Tasker Capital Corp.; United States Coast Guard; and Cellco Partnership d/b/a Verizon Wireless. This list does not reveal all of Bealine's customers.

Some of the waste Bealine transported to the USOR Site was RCRA hazardous waste described on USOR Site Records as: "Hazardous Waste, Liquid, N.O.3.9.NA3082,III" (AAA Cooper); "Waste Caustic alkali liquids, n.o.s., 8, UN 1919, II" (All Chem); "RQ, Waste Corrosive Liquid, N.O.S., 8, UN1760, PGII (Acrylic Acid)" (American Acryl); "Combustible Liquid, N.O.S. (contains diesel), Comb. Liquid, PG III" (Baker Hughes); "Hazardous Waste, Liquid N.O.S. (Benzene) 9 NA3082 III" (Dow Haltermann); "RQ, Waste Flammable Liquids, N.O.S. (Hexane), 3, 1993, PG I, EAG 128" (Formosa Plastics); "Waste Corrosive Liquid, [], Inorganic, NOS (Sodium Hydroxide) 8 UN 3263 PG II" (Haltermann Custom Processing); "Hazardous Waste Liquid, NOS (BENZENE) 9 NA3082 III" (Hoyer Global); "Paint related material including paint thinning, 3, UN1263, PG III (Universal)" (InkJet); "WASTE FLAMMABLE LIQUID, N.O.S. (WASTERWATER CONTAINING ORGANICS) 3, UN1963 III DOO1" (Johann Haltermann); "RQ, Waste Flammable Liquids N.O.S. (Styrene), 3, UN1993, PG III" (K-Solv); "Waste Hazardous Liquid, Reactive, n.o.s., contains, (diesulfides, t-butyl mercaptans) 9, UN3082, III" (KMCO); "RQ Waste Flammable Liquid, NOS (Petroleum Distillate) 3 UN1993 III" (LBC Baton Rouge); "Waste Flammable Liquid, NOS (RTBA) 3 UN1993 III" (LBC Houston); "Waste Corrosive Liquid, Flammable, NOS (Sodium silicate, Toluene) 8, UN 2920 PG II" (MEMC Pasadena); "Hazardous Waste Liquid, N.O.S. (Benzene) 8 NA3082 PG III" (ONEOK Hydrocarbons); "RQ: WASTE COMBUSTIBLE LIQUID; n.o.s.;

COMBUSTIBLE LIQUID; 3,NA1993; PGIII (RQ=1,4-DIOXANE 100 LBS)" (Oxid); "Waste Hazardous Liquid, nos, 9, NA3082, PGIII (P Chem); "Waste Corrosive liquid, acidic, inorganic NOS 8, UN3264 PGII (Fluorosilicic acid)" (Pepper Lawson); "RQ WASTE CORROSIVE LIQUID, BASIC, INORGANIC, N.O.S. 8, UN3266 PGIII" (Pilot Chemical); "WASTE CORROSIVE LIQUID, INORGANIC N.O.S., 8, UN 3225, PGIII" (Pilot Industries); "Hazardous Waste Solids, N.O.S.,9, NA 3077, III, (Benzene), RQ" (Southwest Shipyard); "RQ Waste Corrosive Liquid N.O.S. 8, UN1760 PGIII (Sulfuric Acid Solution)" (Tasker Manufacturing); "Hazardous Waste Liquid, N.O.S. (Benzene) 9 NA3082 PGIII" (Texas Petrochemicals); "RQ, Hazardous Waste, Liquid, N.O.S. (Benzene) 9, NA3082 PG III" (TT Barge Cleaning Mile 183); "RQ Hazardous Waste Liquid, N.O.s. (Benzene), 9 NA3082 PG III" (TT Barge 237); and "RQ Waste Corrosive Liquid Basic Inorganic, N.O.S. (Hexamethyldiamine) 8 UN 3266 PG II" (VLS Recovery Services). *See* Exh. A, Bates Nos. USOR-08202975 (AAA Cooper), USOR-12101070 (Pilot Chemical), USOR-STR0501624 (Pilot Industries), USOR-STR0102399 (Tasker Manufacturing).

## VI. CONCLUSION

Based on Bealine's admissions and the aforementioned, the evidence is undisputed that Bealine was a transporter under CERCLA. Therefore, summary judgment is appropriate. *See Shields* 389 F.3d at 149-150. The extent to which Bealine is liable for response costs is a matter yet to be determined. The Court, therefore, Grants USOR's motion for partial summary judgment.

SIGNED on this 28th day of June, 2017.

_____
Kenneth M. Hoyt
United States District Judge