UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| USOR SITE PRP GROUP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-2441 |
| | § | |
| LEI RONE ENGINEERS, LTD *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**I.     INTRODUCTION**

Before the Court is the defendant, LEI Rone Engineers, LTD ("LEI Rone") motion for summary judgment filed against the plaintiff, USOR Site PRP Group ("USOR")[1]. The Court notes that it has issued an omnibus memorandum opinion identifying and discussing undisputed facts and as well, the rudiments of the applicable law, associated solely with the issue of liability under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA") and the Texas Solid Waste Disposal Act ("TSDWA"). *See* [DE# 3890]. With that memorandum opinion in place and the issue of general liability resolved, the Court will hereafter addresses LEI Rone's motion for summary judgment [DE# 3306].

**II.    JURISDICTIONAL BASES**

This suit was filed by USOR to collect response costs and expenses due to alleged environmental contamination at the U. S. Oil Recovery Superfund Site ("USOR Site") and the MCC Recycling Facility located at 200 N. Richey and 400 N. Richey in Pasadena, Texas respectively. On August 14, 2014, the USOR filed this complaint against hundreds of defendants asserting that they are collectively responsible, under federal and state law, for response costs

---

[1] The Court adopts the USOR Statement of Undisputed Material Facts, found in its several motions for summary judgment that includes attached exhibits, in reaching its conclusion on the issue of liability.

and expenses associated with remediating environmental contamination at the identified USOR Sites.

Since the original complaint was filed, the USOR has amended its suit on two occasions, the last on August 1, 2016. The USOR seeks contribution, cost recovery that has occurred or will occur, and declaratory relief under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and cost recovery under the Texas Solid Waste Disposal Act ("TSWDA"). *See* [42 U.S.C. §§ 9601 *et. seq.*; Tex. Health & Safety Code Ann. §§ 361.001 *et. seq.*, respectively]. This Court has jurisdiction to entertain the issues raised by the USOR under both CERCLA and TSWDA.

### III. HISTORICAL BACKGROUND INCLUDING ADMINISTRATIVE RECORD

The USOR consists of firms, corporations, associations, and/or partnerships. The EPA has determined that the members of the USOR are "persons" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21). *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "c," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC Conclusions of Law and Determinations ¶ 28 (Dkt. No. 1429-2, at 8)]; and, (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 23 (Dkt. No. 3187-1, at 6)]. Likewise, TCEQ has determined that the members of the USOR are "persons" as defined by Section 361.003(23) of the TSWDA for purposes of USOR's action under Section 361.344 of the TSWDA, TEX. HEALTH & SAFETY CODE ANN. § 361.003(23). *See* [TCEQ Approval Letter (Dkt. No. 3187-3)].

The members of the USOR are respondents to Removal Action AOC, AOI-1 RI/FS AOC, and Second Removal Action AOC. The USOR is conducting response activities at the USOR Site. *See generally* (a) [Removal Action AOC (Dkt. No. 1429-1)]; (b) [AOI-1 RI/FS AOC

(Dkt. Nos. 1429-1 and 1429-2)]; (c) [Second Removal Action AOC (Dkt. Nos. 3187-1 and 3187-2)]; and, (d) [TCEQ Approval Letter (Dkt. No. 3187-3)].

The USOR Site consists of approximately 18 acres, located generally at the US Oil Recovery facility at 400 N. Richey Street and the MCC Recycling facility at 200 N. Richey Street in Pasadena, Texas, and EPA has determined the USOR Site is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9). *See* (a) [Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-10-11, effective August 25, 2011 ("Removal Action AOC"), Definition "p." at p.3, Finding of Fact "a." at p.4, and Conclusion of Law and Determination "a." at p.7 (Dkt. No. 1429-1, at 3, 4, 7)][2]; (b) [Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, U.S. EPA Region 6, CERCLA Docket No. 06-03-15 ("AOI-1 RI/FS AOC"), Definition "u." at p.5, Finding of Fact p.6, ¶ 13, and Conclusions of Law and Determinations at p.8, ¶ 25 (Dkt. No. 1429-2, at 5, 6, 8)][3]; and, (c) [Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-11-16 ("Second Removal Action AOC"), at Definition "s." at p.4, Finding of Fact "a." at p.4, and Conclusions of Law and Determinations, at p.6, ¶ 20 (Dkt. No. 3187-1, at 4, 6)].[4]

The USOR Site was an oil processing and waste treatment facility that received and performed pretreatment of municipal and industrial Class I and Class II wastewater, characteristically hazardous waste, used oil and oily sludges, and municipal solid waste. *See* (a) [Removal Action AOC, Findings of Fact "a" and "c" at p.4 (Dkt. No. 1429-1, at 4)]; (b) [AOI-1 RI/FS AOC, Findings of Fact 13 and 15 at p.6 (Dkt. No. 1429-2 at 6)]; and, (c) [Second Removal Action AOC, Findings of Fact ¶ 11 at p.5 (Dkt. No. 3187-1, at 5)]. The EPA has determined that

---

[2] The Removal Action AOC is in the record as Exhibit A (Dkt. No. 1429-1).
[3] The AOI-1 RI/FS AOC is in the record as Exhibit B (Dkt. Nos. 1429-2 and 1430).
[4] The Second Removal Action AOC is in the record as Exhibit A (Dkt. Nos. 3187-1 and 3187-2).

there has been a release or threatened release of hazardous substances from the USOR Site as defined by Section 101(22) of CERCLA, 42 U.S.C. § 9601(22). *See* [(a) Removal Action AOC, Findings of Fact "k." – "r." at p.6, and Conclusion of Law and Determination "b." and "e." at p.7 (Dkt. No. 1429-1, at 6, 7)]; (b) [AOI-1 RI/FS AOC, Conclusions of Law and Determinations ¶¶ 26–27 (Dkt. No. 1429-2, at 8)]; (c) [Second Removal Action AOC, Findings of Fact ¶¶ 12–14, Conclusions of Law and Determinations ¶¶ 21–22 (Dkt. No. 3187-1, at 5–6)]; and (d) [EPA, Designation of Hazardous Substances, 40 CFR § 302.4 (Dkt. No. 1431-4)].[5]

The TCEQ has also determined that there has been a release or threatened release from the USOR Site as defined by Section 361.003(28) of the TSWDA for purposes of USOR's action under Section 361.344 of the TSWDA, TEX. HEALTH & SAFETY CODE ANN. § 361.003(28). *See* [TCEQ Approval Letter (Dkt. No. 3187-3)].[6] Moreover, it has approved the USOR Site PRP Group's response activities as the USOR Site. *See* [TCEQ Approval Letter [Dkt. No. 3187-3)].

The USOR Site PRP Group has incurred and will continue to incur response costs as a result of the release or threatened release of hazardous substances and solid waste at the USOR Site. *See* (a) [Affidavit of Joe Biss dated October 26, 2016 (Dkt. No. 3187-4)][7]; (b) [Removal Action AOC (Dkt. No. 1429-1)]; (c) [AOI-1 RI/FS AOC (Dkt. Nos. 1429-1 and 1429-2)]; (d) [Second Removal Action AOC (Dkt. Nos. 3187-1 and 3187-2)]; and (e) [TCEQ Approval Letter (Dkt. No. 3187-3)].

The EPA has determined that the USOR's response costs are necessary to address the release or threatened release of hazardous substances from the USOR Site. *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "f," p.7 (Dkt. No. 1429-1, at 7)]; (b)

---

[5]The EPA Designation of Hazardous Substances is in the record as Exhibit G (Dkt. No. 1431-4).
[6]The TCEQ Approval Letter is in the record as Exhibit B (Dkt. No. 3187-3).
[7]The Affidavit of Joe Biss is in the record as Exhibit C (Dkt. No. 3187-4).

[AOI-1 RI/FS AOC, Conclusions of Law and Determinations ¶¶ 30–31 (Dkt. No. 1429-2, at 8)]; and (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 25 (Dkt. No. 3187-1, at 6–7)]. As well, TCEQ has determined that the USOR's response costs are necessary to address the release or threatened release of solid waste from the USOR Site. *See* [TCEQ Approval Letter (Dkt. No. 3187-3)]. The EPA has also determined that the USOR's response costs are consistent with the National Contingency Plan ("NCP"). *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "f," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC Conclusions of Law and Determinations ¶ 31 (Dkt. No. 1429-2, at 8)]; (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 25 (Dkt. No. 3187-1, at 6–7)]. The Court adopts the EPA's findings as to response costs necessity and consistency.

## IV.  SUMMARY JUDGMENT STANDARD

Both the USOR and certain defendants have filed motions and/or cross-motions for summary judgment. These motions are not addressed in this Memorandum. However, the law that controls the outcome is set forth hereinafter.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).

Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial." Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

V.   **CONTENTIONS AND RESPONSES**

LEI Rone contends that it is entitled to summary judgment because: (a) USOR's CERCLA claim fails because LEI Rone did not generate or arrange for the disposal of any hazardous substances at the USOR Site; (b) USOR failed to satisfy the notice requirements of TSWDA; (c) LEI is entitled to derivative governmental immunity; and (d) equity does not support allocation of responsive costs to LEI Rone because it did not generate or arrange for the disposal of any hazardous substances at the USOR Site.

In its response, USOR asserts: (a) the petroleum exclusion asserted by LEI Rone does not apply to the hazardous substances released by LEI Rone; (b) LEI is not entitled to derivative

governmental immunity; (c) LEI's equity argument concerning allocation of response costs is premature; and (d) LEI's argument concerning lack of or, inadequate notice is unfounded.

## VI. DISCUSSION AND ANALYSIS

The Court is of the opinion that LEI Rone's motion for summary judgment should be denied and that the evidence supports a summary judgment in favor of USOR which the Court *sua sponte* grants.

LEI Rone's argument concerning the nature of its waste fails. In *Tosco Corp. v. Koch Industries, Inc.,* 216 F.3d 886 [10th Cir. 2000], the Tenth Circuit Court of Appeals, addressing a similar argument, interpreted Congress' intent on the matter as follows: "Congress intended that the petroleum exclusion address oil spills, not a release of oil which has become infused with hazardous substances." *Id.* at 893; *see also Wilshire Westwood Assoc. v. Atlantic Richfield Corp.,* 881 F.2d 801, 805 9th Cir. 1989). This interpretation of the law forecloses LEI Rone's contention. The fuel discharged was introduced into a petroleum product used in machines that allowed for the transfer of heavy metals into the water. *See e.g., Blasland, Bouck 7 Lee, Inc. v. City of North Miami*, 96 F. Supp. 1375, 1380 (S. D. Fla. 2000). The Court concludes that it is not entitled to the petroleum exclusion, as a matter of law.

The Court is also of the opinion that LEI Rone is not entitled to governmental immunity. The evidence is undisputed that USOR seeks relief concerning hazardous and solid waste delivered only to the USOR Site. The nature and extent of LEI Rone's liability, if any, must be addressed in the light of whether the USOR Site's handling of waste was egregious and whether it received notice of violations. The evidence supports an undisputed finding that LEI Rone is not exempt because of its "claimed" response action contractor status.

LEI Rone's equity claim and lack of notice arguments also fall under the weight of the preliminary evidentiary USOR reports. Equity principles may become a factor in the determination of allocation of responsibility; however, the case has not reached that stage in its proceedings. *See Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 667 (5th Cir. 1989).

Based on the foregoing discussion and analysis, the Court determines that LEI Rone's motion for summary judgment should be Denied, and the Court Grants partial summary judgment *sua sponte* to USOR.

It is so ORDERED.

SIGNED on this 29th day of June, 2017.

Kenneth M. Hoyt
United States District Judge