Case 4:14-cv-02441   Document 4124   Filed on 07/26/17 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
July 26, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| USOR SITE PRP GROUP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-2441 |
| | § | |
| A&M CONTRACTORS, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

**I.   INTRODUCTION**

Before the Court is the defendant, JLH Automotive, Ltd. d/b/a Jeff Haas Mazada ["JLH Haas"] motion for summary judgment filed against the plaintiff, USOR Site PRP Group ("USOR")[1]. The Court notes that it has issued an omnibus memorandum opinion identifying and discussing undisputed facts and as well, the rudiments of the applicable law, associated solely with the issue of liability under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA") and the Texas Solid Waste Disposal Act ("TSDWA"). *See* [DE# 3890]. With that memorandum opinion in place and the issue of general liability resolved, the Court will hereafter addresses JLH Haas' motion for summary judgment [DE# 3171] and USOR's cross-motion for summary judgment and response [DE#s 3368, 3594].

**II.   JURISDICTIONAL BASES**

This suit was filed by USOR to collect response costs and expenses due to alleged environmental contamination at the U. S. Oil Recovery Superfund Site ("USOR Site") and the MCC Recycling Facility located at 200 N. Richey and 400 N. Richey in Pasadena, Texas respectively. On

---

[1] The Court adopts the USOR Statement of Undisputed Material Facts, found in its motion for summary judgment that includes attached exhibits, in reaching its conclusion on the issue of liability. To the extent that any defendant is found liable that finding rest in the individual defenses and facts to be determined by the Court. It is noteworthy that no defendant has challenged the EPA's administrative findings and conclusion.

August 14, 2014, the USOR filed this complaint against hundreds of defendants asserting that they are collectively responsible, under federal and state law, for response costs and expenses associated with remediating environmental contamination at the identified USOR Sites.

Since the original complaint was filed, the USOR has amended its suit on two occasions, the last on August 1, 2016. The USOR seeks contribution, cost recovery that has occurred or will occur, and declaratory relief under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and cost recovery under the Texas Solid Waste Disposal Act ("TSWDA"). *See* [42 U.S.C. §§ 9601 *et. seq.*; Tex. Health & Safety Code Ann. §§ 361.001 *et. seq.*, respectively]. This Court has jurisdiction to entertain the issues raised by the USOR under both CERCLA and TSWDA.

### III.   HISTORICAL BACKGROUND INCLUDING ADMINISTRATIVE RECORD

The USOR consists of firms, corporations, associations, and/or partnerships. The EPA has determined that the members of the USOR are "persons" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21). *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "c," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC Conclusions of Law and Determinations ¶ 28 (Dkt. No. 1429-2, at 8)]; and, (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 23 (Dkt. No. 3187-1, at 6)]. Likewise, TCEQ has determined that the members of the USOR are "persons" as defined by Section 361.003(23) of the TSWDA for purposes of USOR's action under Section 361.344 of the TSWDA, Tex. Health & Safety Code Ann. § 361.003(23). *See* [TCEQ Approval Letter (Dkt. No. 3187-3)].

The members of the USOR are respondents to Removal Action AOC, AOI-1 RI/FS AOC, and Second Removal Action AOC. The USOR is conducting response activities at the USOR Site. *See generally* (a) [Removal Action AOC (Dkt. No. 1429-1)]; (b) [AOI-1 RI/FS AOC (Dkt. Nos. 1429-1 and 1429-2)]; (c) [Second Removal Action AOC (Dkt. Nos. 3187-1 and 3187-2)]; and, (d) [TCEQ Approval Letter (Dkt. No. 3187-3)].

The USOR Site consists of approximately 18 acres, located generally at the US Oil Recovery facility at 400 N. Richey Street and the MCC Recycling facility at 200 N. Richey Street in Pasadena, Texas, and EPA has determined the USOR Site is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9). *See* (a) [Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-10-11, effective August 25, 2011 ("Removal Action AOC"), Definition "p." at p.3, Finding of Fact "a." at p.4, and Conclusion of Law and Determination "a." at p.7 (Dkt. No. 1429-1, at 3, 4, 7)][2]; (b) [Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, U.S. EPA Region 6, CERCLA Docket No. 06-03-15 ("AOI-1 RI/FS AOC"), Definition "u." at p.5, Finding of Fact p.6, ¶ 13, and Conclusions of Law and Determinations at p.8, ¶ 25 (Dkt. No. 1429-2, at 5, 6, 8)][3]; and, (c) [Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-11-16 ("Second Removal Action AOC"), at Definition "s." at p.4, Finding of Fact "a." at p.4, and Conclusions of Law and Determinations, at p.6, ¶ 20 (Dkt. No. 3187-1, at 4, 6)].[4]

The USOR Site was an oil processing and waste treatment facility that received and performed pretreatment of municipal and industrial Class I and Class II wastewater, characteristically hazardous waste, used oil and oily sludges, and municipal solid waste. *See* (a) [Removal Action AOC, Findings of Fact "a" and "c" at p.4 (Dkt. No. 1429-1, at 4)]; (b) [AOI-1 RI/FS AOC, Findings of Fact 13 and 15 at p.6 (Dkt. No. 1429-2 at 6)]; and, (c) [Second Removal Action AOC, Findings of Fact ¶ 11 at p.5 (Dkt. No. 3187-1, at 5)]. The EPA has determined that there has been a release or threatened release of hazardous substances from the USOR Site as defined by Section 101(22) of CERCLA, 42 U.S.C. § 9601(22). *See* [(a) Removal Action AOC, Findings of Fact "k." – "r." at p.6, and Conclusion of Law and Determination "b." and "e." at p.7 (Dkt. No. 1429-1, at 6, 7)]; (b) [AOI-1

---

[2] The Removal Action AOC is in the record as Exhibit A (Dkt. No. 1429-1).
[3] The AOI-1 RI/FS AOC is in the record as Exhibit B (Dkt. Nos. 1429-2 and 1430).
[4] The Second Removal Action AOC is in the record as Exhibit A (Dkt. Nos. 3187-1 and 3187-2).

RI/FS AOC, Conclusions of Law and Determinations ¶¶ 26–27 (Dkt. No. 1429-2, at 8)]; (c) [Second Removal Action AOC, Findings of Fact ¶¶ 12–14, Conclusions of Law and Determinations ¶¶ 21–22 (Dkt. No. 3187-1, at 5–6)]; and (d) [EPA, Designation of Hazardous Substances, 40 CFR § 302.4 (Dkt. No. 1431-4)].[5]

The TCEQ has also determined that there has been a release or threatened release from the USOR Site as defined by Section 361.003(28) of the TSWDA for purposes of USOR's action under Section 361.344 of the TSWDA, TEX. HEALTH & SAFETY CODE ANN. § 361.003(28). *See* [TCEQ Approval Letter (Dkt. No. 3187-3)].[6] Moreover, it has approved the USOR Site PRP Group's response activities as the USOR Site. *See* [TCEQ Approval Letter [Dkt. No. 3187-3)].

The USOR Site PRP Group has incurred and will continue to incur response costs as a result of the release or threatened release of hazardous substances and solid waste at the USOR Site. *See* (a) [Affidavit of Joe Biss dated October 26, 2016 (Dkt. No. 3187-4)][7]; (b) [Removal Action AOC (Dkt. No. 1429-1)]; (c) [AOI-1 RI/FS AOC (Dkt. Nos. 1429-1 and 1429-2)]; (d) [Second Removal Action AOC (Dkt. Nos. 3187-1 and 3187-2)]; and (e) [TCEQ Approval Letter (Dkt. No. 3187-3)].

The EPA has determined that the USOR's response costs are necessary to address the release or threatened release of hazardous substances from the USOR Site. *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "f," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC, Conclusions of Law and Determinations ¶¶ 30–31 (Dkt. No. 1429-2, at 8)]; and (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 25 (Dkt. No. 3187-1, at 6–7)]. As well, TCEQ has determined that the USOR's response costs are necessary to address the release or threatened release of solid waste from the USOR Site. *See* [TCEQ Approval Letter (Dkt. No. 3187-3)]. The EPA has also determined that the USOR's response costs are consistent with the National Contingency Plan ("NCP"). *See* (a) [Removal Action AOC, Conclusions of Law and Determinations

---

[5] The EPA Designation of Hazardous Substances is in the record as Exhibit G (Dkt. No. 1431-4).
[6] The TCEQ Approval Letter is in the record as Exhibit B (Dkt. No. 3187-3).
[7] The Affidavit of Joe Biss is in the record as Exhibit C (Dkt. No. 3187-4).

"f," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC Conclusions of Law and Determinations ¶ 31 (Dkt. No. 1429-2, at 8)]; (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 25 (Dkt. No. 3187-1, at 6–7)]. The Court adopts the EPA's findings as to response costs necessity and consistency.

### IV.  SUMMARY JUDGMENT STANDARD

Both the USOR and certain defendants have filed motions and/or cross-motions for summary judgment. These motions are not addressed in this Memorandum. However, the law that controls the outcome is set forth hereinafter.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).

Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial." Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence

admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

V.   **CONTENTIONS OF THE PARTIES**

   A.   *Contentions of JLH Haas*

JHL Haas contends that the "sole basis for USOR's claim against it rests on the transport of "grit from" . . . its dealership to the USOR Site. JLH Haas attacks USOR's claim of liability under 42 U.S.C. § 9607(a) on the basis that its grit did not contained the hazardous substances collected by USOR at its site. As proof of no liability, JLH Haas attaches the affidavit of Jeff Haas, its president. In his affidavit, he purports that USOR's claims concerning CERCLA and TSWDA liability are defeated by the fact that JHL Haas' grit waste did not contain hazardous substances. Therefore, summary judgment in its behalf is appropriate.

   B.   *USOR Contentions and Cross-Motion for Summary Judgment*

USOR points out that JLH Haas does not dispute that its waste stream is properly described as "grit." Nor does JHL Haas dispute that the grit waste attributed it on the USOR Site records was generated at the dealership and its service centers. Likewise, there is no dispute that JLH Haas is registered as a hazardous waste generator. Therefore, the sole question for resolution, argues USOR, is whether JLH Haas' waste stream contained the hazardous substances identified in Dr. Kirk W. Brown's report and affidavit.

VI.   **DISCUSSION AND ANALYSIS**

The Court is of the opinion that the evidence is undisputed that JHL Haas is an arranger, as defined by CERCLA. *See* [DE# 3890]; *see also Burlington N. & Santa Fe Ry Co. v. United States*, 556 U.S. 499, 611 (2009). As well, it is undisputed that: (a) the USOR Site is a facility;

(b) it is engaged in the treatment and disposal of hazardous substances; (c) JLH Haas disposed of its waste stream at the USOR Site; (d) the substances released or threatened to be released are the same as those disposed of by JLH Haas; (e) that response is necessary and reasonable; and (f) JLH Haas is a covered person under the act or that response costs is necessary or reasonable. *See* [DE# 3890]; *see also* Tex. Health & Safety Code Ann. §§ 361,003(28); 361.271(a)(3); 361.344; 42 U.S.C. § 9601(22).

The president of JLH Haas prepared and filed an affidavit. However, beyond the customary formalities concerning the waste facilities where grit is collected, he states: "[T]he water generated drains into the sanctuary system with a grit trap used to trap dirt. The dirt goes into two separate waste facilities, one for each car wash." Attached to Jeff Haas' affidavit is the "Solid/Special Waste Manifest" issued by the City of Houston. However, these statements and/or representations do not meet or defeat Dr. Brown's expert testimony. Dr. Brown's report is based on the discovery conducted by the USOR Site and relevant state and federal agencies. His expert opinion concerning the waste stream generated by car washes is general, particularly the grit that is collected during the washing of old and new vehicles while using corrosion inhibitors, spot removers, degreasing compounds, tar removal and solvents is unchallenged. He testified as follows:

> I have reviewed the discovery records concerning the operations of J.L.H. Automotive, Ltd. d/b/a Jeff Haas Mazda which were provided by counsel.
>
> In defendant J.L.H. Automotive, Ltd. dba Jeff Haas Mazda's Original Answer to the Second Amended Complaint filed by the USOR Site PRP Group, J.L.H. Automotive stated, "JH Mazda denies it is an arranger or generator of materials containing hazardous substances. JH Mazda further denies it selected the USOR Site for the disposal of any materials containing hazardous substances." However, J.L.H. Automotive stated, "JH Mazda admits that Southern Discount was retained to haul away the

contents from its grit traps but denies it selected the USOR Site" (J.L.H. Automotive, 2016a).

In the Affidavit of Jeff Haas, Mr. Haas stated, "Haas Mazda has two car washes that are used to periodically wash new and used cars that are held for sale. The car washes are also used to wash customer vehicles that are in for service work" (J.L.H. Automotive, 2016b).

According to internet Yellow Pages listings for Jeff Haas Mazda, the Defendant operated an automobile dealership for new and used vehicles at 11222 Katy Freeway in Houston, Harris County, Texas. The dealership also operates a service department for vehicle maintenance. The NAICS Codes for the facility are 441110, 441120, 811191, and 811198.

In the Texas Commission of Environmental Quality ("TCEQ") Central Registry, the Jeff Haas Mazda facility is affiliated with two regulated entities. JCH Automotive dba Jeff Haas Mazda is the regulated entity under the Industrial and Hazardous Waste, Solid Waste Registration program. The facility is also registered as JLH Automotive, LTD as a fleet refueling operation with an inactive petroleum storage tank registration (TCEQ, 2017a, TCEQ, 2017b).

JCH Automotive dba Jeff Haas Mazda is also registered as a hazardous waste generator in the EPA RCRA Information database. The facility is affiliated with applicable waste codes D001, D006, D018, and D039, indicating ignitable wastes along with cadmium, benzene, and tetrachloroethylene produced as waste products (EPA, 2017).

As indicated in the affidavit of Mr. Haas, the car wash bays were used to wash new and used vehicles from the facility inventory as well as customer vehicles following maintenance work. Waste streams generated as a result of the washing operations would have included dirt, oil, oily sludge, grease, and road tar. More likely than not, these waste streams would have also included corrosion inhibitors, spot removers, degreasing compounds, tar removers and solvents.

In my opinion, based on the J.L.H. Automotive discovery records that I reviewed, my knowledge and experience with grit trap waste disposal operations carried out by companies like J.L.H. Automotive during the time period in question, and references provided by EPA and other sources, the waste streams listed above

> contained one or more of the following substances, all of which are hazardous substances under CERCLA: acetone, benzene, dichloroethylene, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, xylene, arsenic, cadmium, chromium, copper, lead, and zinc (Brown and Nelson, 1984; EPA, 1991, EPA, 1999).
>
> Based on the waste manifests contained in the Defendant's Motion for Summary Judgement, I understand that the grit trap wastes of J.L.H. Automotive were disposed of at the USOR site and would have contributed to the wastes that were present at the USOR site (J.L.H. Automotive, 2016b).
>
> Emergency response actions by USEPA and the TCEQ in July, 2010, November 2010, and January 2011, identified the following substances, among others, as contaminants of concern for the site: acetone, benzene, toluene, xylene, dichloroethylene, methyl ethyl ketone, ethylene chloride, perchloroethylene, trichloroethane, trichloroethylene, and vinyl chloride. (EPA, 2011 a; EPA, 2011 b)

The record before the Court demonstrates the absence of a genuine issue of material fact concerning USOR's motion for summary judgment. Moreover, Jeff Haas' affidavit does not create a disputed fact issue because the two affidavits, that of Jeff Haas and that of Dr. Brown are not of equal dignity. *See Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). JLH Haas must go beyond its pleadings and self-serving affidavit(s) and specifically designate facts of a scientific nature that in fact, its waste stream did not contain the hazardous substances identified. *Stults v. Conoco, Inc.,* 76 F.3d 65, 656 (5th Cir. 1996).

Dr. Brown's opinion is credible and unchallenged. It is based on the methodology and data typically used and accepted in like or similar cases. His qualifications to give the opinion that he gave is undisputed. Nevertheless, JLH Haas contends that Dr. Brown's opinion is "nothing more than his conclusion (without any basis) . . . or knowledge of a grit trap from washing of motor vehicles . . .". This statement does not create a genuine disputed fact issue for the same reasons stated earlier. A personal knowledge of JLH's grit trap operations is not

required for the opinion(s) expressed. Moreover, the mere existence of some alleged facts that have not been considered in the data collection and analysis of a trained toxicologist does not defeat his opinion in an otherwise properly supported motion for summary judgment. *See Consair v. Stapp Towing Co., Inc.,* 228 F. Supp. 2d 795, 797 (S. D. Tex. 2002).

### VII. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes the JLH Haas' motion for summary judgment should be Denied and the cross-motion for summary judgment of USOR should be granted.

It is so Ordered.

SIGNED on this 26th day of July, 2017.

_____
Kenneth M. Hoyt
United States District Judge