UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| USOR SITE PRP GROUP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-2441 |
| | § | |
| A&M CONTRACTORS, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Before the Court is USOR's amended motion for summary judgment and the defendant, the City of Pasadena's, cross-motion for summary judgment[1]. The Court notes that it has issued an omnibus memorandum opinion identifying and discussing undisputed facts and as well, the rudiments of the applicable law, associated solely with the issue of liability under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA") and the Texas Solid Waste Disposal Act ("TSDWA"). With that memorandum opinion in place and the issue of general liability resolved, the Court will hereafter addresses USOR's amended motion for summary judgment [DE# 3286] and the City's cross-motion for summary judgment [DE# 3758].

## II. JURISDICTIONAL BASES

This suit was filed by USOR to collect response costs and expenses due to alleged environmental contamination at the U. S. Oil Recovery Superfund Site ("USOR Site") and the MCC Recycling Facility located at 200 N. Richey and 400 N. Richey in Pasadena, Texas

---

[1] The Court adopts the USOR Statement of Undisputed Material Facts, found in its motion for summary judgment that includes attached exhibits, in reaching its conclusion on the issue of liability. To the extent that any defendant is found liable that finding rest in the individual defenses and facts to be determined by the Court. It is noteworthy that no defendant has challenged the EPA's administrative findings and conclusion.

respectively. On August 14, 2014, the USOR filed this complaint against hundreds of defendants asserting that they are collectively responsible, under federal and state law, for response costs and expenses associated with remediating environmental contamination at the identified USOR Sites.

Since the original complaint was filed, the USOR has amended its suit on two occasions, the last on August 1, 2016. The USOR seeks contribution, cost recovery that has occurred or will occur, and declaratory relief under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and cost recovery under the Texas Solid Waste Disposal Act ("TSWDA"). *See* [42 U.S.C. §§ 9601 *et. seq.*; Tex. Health & Safety Code Ann. §§ 361.001 *et. seq.*, respectively]. This Court has jurisdiction to entertain the issues raised by the USOR under both CERCLA and TSWDA.

## III.     HISTORICAL BACKGROUND INCLUDING ADMINISTRATIVE RECORD

The USOR consists of firms, corporations, associations, and/or partnerships. The EPA has determined that the members of the USOR are "persons" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21). *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "c," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC Conclusions of Law and Determinations ¶ 28 (Dkt. No. 1429-2, at 8)]; and, (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 23 (Dkt. No. 3187-1, at 6)]. Likewise, TCEQ has determined that the members of the USOR are "persons" as defined by Section 361.003(23) of the TSWDA for purposes of USOR's action under Section 361.344 of the TSWDA, TEX. HEALTH & SAFETY CODE ANN. § 361.003(23). *See* [TCEQ Approval Letter (Dkt. No. 3187-3)].

The members of the USOR are respondents to Removal Action AOC, AOI-1 RI/FS AOC, and Second Removal Action AOC. The USOR is conducting response activities at the USOR Site. *See generally* (a) [Removal Action AOC (Dkt. No. 1429-1)]; (b) [AOI-1 RI/FS AOC (Dkt. Nos. 1429-1 and 1429-2)]; (c) [Second Removal Action AOC (Dkt. Nos. 3187-1 and 3187-2)]; and, (d) [TCEQ Approval Letter (Dkt. No. 3187-3)].

The USOR Site consists of approximately 18 acres, located generally at the US Oil Recovery facility at 400 N. Richey Street and the MCC Recycling facility at 200 N. Richey Street in Pasadena, Texas, and EPA has determined the USOR Site is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9). *See* (a) [Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-10-11, effective August 25, 2011 ("Removal Action AOC"), Definition "p." at p.3, Finding of Fact "a." at p.4, and Conclusion of Law and Determination "a." at p.7 (Dkt. No. 1429-1, at 3, 4, 7)][2]; (b) [Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, U.S. EPA Region 6, CERCLA Docket No. 06-03-15 ("AOI-1 RI/FS AOC"), Definition "u." at p.5, Finding of Fact p.6, ¶ 13, and Conclusions of Law and Determinations at p.8, ¶ 25 (Dkt. No. 1429-2, at 5, 6, 8)][3]; and, (c) [Administrative Settlement Agreement and Order on Consent for Removal Action, U.S. EPA Region 6, CERCLA Docket No. 06-11-16 ("Second Removal Action AOC"), at Definition "s." at p.4, Finding of Fact "a." at p.4, and Conclusions of Law and Determinations, at p.6, ¶ 20 (Dkt. No. 3187-1, at 4, 6)].[4]

The USOR Site was an oil processing and waste treatment facility that received and performed pretreatment of municipal and industrial Class I and Class II wastewater, characteristically hazardous waste, used oil and oily sludges, and municipal solid waste. *See* (a)

---

[2] The Removal Action AOC is in the record as Exhibit A (Dkt. No. 1429-1).
[3] The AOI-1 RI/FS AOC is in the record as Exhibit B (Dkt. Nos. 1429-2 and 1430).
[4] The Second Removal Action AOC is in the record as Exhibit A (Dkt. Nos. 3187-1 and 3187-2).

[Removal Action AOC, Findings of Fact "a" and "c" at p.4 (Dkt. No. 1429-1, at 4)]; (b) [AOI-1 RI/FS AOC, Findings of Fact 13 and 15 at p.6 (Dkt. No. 1429-2 at 6)]; and, (c) [Second Removal Action AOC, Findings of Fact ¶ 11 at p.5 (Dkt. No. 3187-1, at 5)]. The EPA has determined that there has been a release or threatened release of hazardous substances from the USOR Site as defined by Section 101(22) of CERCLA, 42 U.S.C. § 9601(22). *See* [(a) Removal Action AOC, Findings of Fact "k." – "r." at p.6, and Conclusion of Law and Determination "b." and "e." at p.7 (Dkt. No. 1429-1, at 6, 7)]; (b) [AOI-1 RI/FS AOC, Conclusions of Law and Determinations ¶¶ 26–27 (Dkt. No. 1429-2, at 8)]; (c) [Second Removal Action AOC, Findings of Fact ¶¶ 12–14, Conclusions of Law and Determinations ¶¶ 21–22 (Dkt. No. 3187-1, at 5–6)]; and (d) [EPA, Designation of Hazardous Substances, 40 CFR § 302.4 (Dkt. No. 1431-4)].[5]

The TCEQ has also determined that there has been a release or threatened release from the USOR Site as defined by Section 361.003(28) of the TSWDA for purposes of USOR's action under Section 361.344 of the TSWDA, TEX. HEALTH & SAFETY CODE ANN. § 361.003(28). *See* [TCEQ Approval Letter (Dkt. No. 3187-3)].[6] Moreover, it has approved the USOR Site PRP Group's response activities as the USOR Site. *See* [TCEQ Approval Letter [Dkt. No. 3187-3)].

The USOR Site PRP Group has incurred and will continue to incur response costs as a result of the release or threatened release of hazardous substances and solid waste at the USOR Site. *See* (a) [Affidavit of Joe Biss dated October 26, 2016 (Dkt. No. 3187-4)][7]; (b) [Removal Action AOC (Dkt. No. 1429-1)]; (c) [AOI-1 RI/FS AOC (Dkt. Nos. 1429-1 and 1429-2)]; (d) [Second Removal Action AOC (Dkt. Nos. 3187-1 and 3187-2)]; and (e) [TCEQ Approval Letter (Dkt. No. 3187-3)].

---

[5] The EPA Designation of Hazardous Substances is in the record as Exhibit G (Dkt. No. 1431-4).
[6] The TCEQ Approval Letter is in the record as Exhibit B (Dkt. No. 3187-3).
[7] The Affidavit of Joe Biss is in the record as Exhibit C (Dkt. No. 3187-4).

The EPA has determined that the USOR's response costs are necessary to address the release or threatened release of hazardous substances from the USOR Site. *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "f," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC, Conclusions of Law and Determinations ¶¶ 30–31 (Dkt. No. 1429-2, at 8)]; and (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 25 (Dkt. No. 3187-1, at 6–7)]. As well, TCEQ has determined that the USOR's response costs are necessary to address the release or threatened release of solid waste from the USOR Site. *See* [TCEQ Approval Letter (Dkt. No. 3187-3)]. The EPA has also determined that the USOR's response costs are consistent with the National Contingency Plan ("NCP"). *See* (a) [Removal Action AOC, Conclusions of Law and Determinations "f," p.7 (Dkt. No. 1429-1, at 7)]; (b) [AOI-1 RI/FS AOC Conclusions of Law and Determinations ¶ 31 (Dkt. No. 1429-2, at 8)]; (c) [Second Removal Action AOC, Conclusions of Law and Determinations ¶ 25 (Dkt. No. 3187-1, at 6–7)]. The Court adopts the EPA's findings as to response costs necessity and consistency.

## IV.    SUMMARY JUDGMENT STANDARD

Both the USOR and certain defendants have filed motions and/or cross-motions for summary judgment. These motions are not addressed in this Memorandum. However, the law that controls the outcome is set forth hereinafter.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the

motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).

Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial." Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## V. FEDERAL LAW STANDARD AND RELATED EPA FINDINGS

### A. *CERCLA and RCRA Defined*

To establish its CERCLA claim, a plaintiff must establish that a defendant is a "covered person" within the meaning of Section 107(a)(3) of CERCLA, which provides, in relevant part:

> (a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section. . .

(3) any person who, by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity containing such hazardous substances. . ., and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence for response costs, of a hazardous substance, shall be liable for–

(B)  any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . .

42 U.S.C. § 9607(a).  Section 107(a) requires a plaintiff to demonstrate that: (1) the USOR Site is a facility, at which (2) there was a release or threatened release, (3) causing the incurrence of response costs, necessary and consistent with the national contingency plan and, (4) the defendant either "arranged for disposal or treatment" or "arranged with a transporter for transport for "disposal or treatment" of "hazardous substances." *See, e.g., Uniroyal Chemical Co. v. Deltech Corp.*, 160 F.3d 238, 242–43 (5th Cir. 1998) as modified on rehr'g (Jan. 8, 1999).

Concerning the question of "facility", the EPA has determined that the USOR Site is a "facility" within the meaning of CERCLA in the Removal Action AOC, the AOI-1 RI/FS AOC, and in the Second Removal Action AOC. Therefore, the EPA's factual determinations warrant deference by this Court. *See, e.g., Galveston-Houston Ass'n for Smog Prevention (GHASP) v. U.S. E.P.A.*, 289 Fed.Appx. 745, 749 (5th Cir. 2008) (deferring to EPA, but noting heightened deference for complex scientific findings as opposed to simple findings of fact).  As discussed earlier, the Court adopts this factual determination.

There has also been an EPA finding that a "release" or threatened "release" of hazardous substances from the USOR Sites occurred. CERCLA defines "release" broadly to mean "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . . ." *See* 42 U.S.C. § 9601(22). As a result of the release or threatened release of hazardous substances at or from the USOR Site, the USOR has incurred response costs. This determination also warrants deference because of the complexity of the data. *Id.* Therefore, this undisputed factual determination is adopted by the Court.

The USOR is the respondent in Removal Action AOC, the AOI-1 RI/FS AOC, and the Second Removal Action AOC. As such, and based on EPA findings, they have and will continue to incur response costs in order to comply with EPA administrative orders. These response costs, as found by the EPA, are "necessary" and this determination in the Court's opinion warrants deference by this Court and the Court adopts this determination. *See GHASP*, 289 Fed.Appx. at

 749.

The EPA has also determined that the USOR's response costs under the Removal Action AOC, AOI-1 RI/FS AOC and Second Removal Action AOC are consistent with the National Contingency Plan. Unlike voluntary response actions, where the burden of demonstrating consistency with the NCP is on a plaintiff, "[w]here a private party is cleaning up a site pursuant to an administrative order . . . or . . . a consent order . . ., the regulations establish an irrebuttable presumption that the private party's actions were consistent with the NCP." *See, e.g.*, *Aviall Services, Inc. v. Cooper Indus., LLC*, 572 F. Supp. 2d 676, 695

(N.D. Tex. 2008), *see, also, Morrison Enters. v. McShares, Inc.*, 302 F.3d 1127, 1137 (10th Cir. 2002).

Regarding the question of "disposal" or "treatment," CERCLA Section 101(29) defines "disposal" and "treatment" as they are defined under the Resource Conservation Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 *et seq*. *See* 42 U.S.C. § 9601(29). RCRA defines "disposal" broadly to mean:

> the discharge, deposit, injection, dumping, spilling, leaking, or placing of any *solid waste* or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3) (emphasis added). In turn, the RCRA defines "solid waste" broadly as:

> garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including sold, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities .

.
.
.

42 U.S.C. § 6903(27). Further, the RCRA defines "treatment to mean:

> The term "treatment," when used in connection with hazardous waste, means any method, technique, or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume. Such term includes any activity or processing designed to change the physical form or chemical composition of hazardous waste so as to render it nonhazardous.

42 U.S.C. § 6903(34).

Taking the USOR's proffers of EPA rulings as true, the Court determines that the USOR Site was engaged in treatment and disposal operations. This fact is also a matter of public record subject to judicial notice as it is "generally known within the territorial jurisdiction" of this Court and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

CERCLA does not define "arranged for," but the Supreme Court has given the term its "ordinary meaning," and held that an "arranger" is one who "takes intentional steps to dispose of a hazardous substance." *MEMC Pasadena, Inc. v. Goodgames Indus. Solutions*, LLC, 143 F. Supp. 3d 570, 578 (S.D. Tex. 2015) (citing *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 499, 611 (2009)). Where the evidence shows that an entity arranges for another, collects and "haul away" its "grit" waste, and chooses an USOR Site as the "Disposal Site" for its waste, it cannot be disputed that this act constitutes an "arrangement" under CERCLA and federal precedent.

"Hazardous substances" are identified in EPA's Designation of Hazardous Substances regulation implementing CERCLA, at 40 CFR 302.4. The USOR has submitted the affidavit of Dr. Kirk W. Brown, a former professor at Texas A&M University, in support of its contentions that waste streams attributed to the defendants contained "hazardous substances" as that term is defined under CERCLA. Dr. Brown credentials are not challenged. Hence, he is an expert capable of opining whether a particular party's waste stream contains hazardous substances, thereby triggering CERCLA liability. The Court finds that he relie[s] on the methodology and data typically used and accepted in these cases . . . and his testimony is,

therefore, admissible." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–95 (1993).

In this case, the USOR relies on Dr. Brown's expert opinions to demonstrate that the waste streams associated with certain defendants' waste such as dirt, oil, oily sludge grease and road tar, as well as corrosion inhibitors, spot removers, degreasing compounds, tar removers and solvents, contained hazardous substances that triggered CERCLA liability. Based on the evidence and his opinion, there is no genuine dispute that these waste contained CERCLA hazardous substances. *See* [Findings of Facts (Dkt. No. 1429, Fact 17)].

The USOR has no obligation to prove that certain hazardous substances, attributable to a defendant, are the same hazardous substances currently being released or threatened to be released at the facility, or that the hazardous substances attributable to a defendant exceed a particular contaminant threshold. *See, Uniroyal Chemical Co., Inc.*, 160 F.3d at 242–43; *Halliburton Energy Servs., Inc. v. NL Indus.*, 648 F. Supp. 2d 840, 848 (S.D. Tex. 2009) ("Because CERCLA imposes strict liability, a plaintiff generally does not need to prove that the defendant caused the contamination, only that the defendant is a 'covered person.'") (citing *OHM Remediation Servs. v. Evans Cooperage Co., Inc.*, 116 F.3d 1574, 1578 (5th Cir. 1997). It is enough that for substance to be determined, a substance is on one or more of the lists identified at 42 U.S.C. § 9601(14), for substance to be determined a hazardous substance, irrespective of the volume or concentration of the substance found at the site in question". *See United States v. Nicolet, Inc.,* 712 F.Supp. 1205, 1207 (E.D. Pa. 1989).

Although the Fifth Circuit Court of Appeals has determined that whether a hazardous substance exceeds "background levels" may be relevant to determining if there was a "release" that caused the incurrence of response costs, *Licciardi v. Murphy Oil U.S.A., Inc.,* 111 F.3d

396, 398-99 (5th Cir. 1997), this is irrelevant to the liability of a "covered person." *See Asarco LLC*, 21 F.Supp. 3d at 803 ("[T]he only causation required under CERCLA is that the release of hazardous substances at the 'facility' cause the response costs; a plaintiff does not need to prove that the defendant's waste caused the response costs." (internal citations omitted).

## B.     State Law Standards TCEQ Findings

To recover costs under state law, specifically, Section 361.344 of the TSWDA, the USOR must establish that: (1) TCEQ has approved the response action; (2) the response action is necessary to address a release or threatened release of solid waste; (3) the costs of the action are reasonable and necessary; (4) the defendant is a "person responsible for solid waste" as defined in § 361.271; and, (5) the USOR made reasonable attempts to notify the defendant(s) of the release and its intent to take steps to eliminate the release. *See* TEX. HEALTH & SAFETY CODE ANN. § 361.344; *e.g.*, *see also R.R. Street & Co., Inc. v. Pilgrim Enters., Inc.*, 166 S.W.3d 232, 240 (Tex. 2005).

TCEQ has been involved in the response actions at the USOR Site in various respects. By letter dated August 4, 2016, TCEQ formally "acknowledge[d] EPA's approval of the USOR's response actions and, for the purposes of Texas Health and Safety Code § 361.344, the TCEQ approve[d] the USOR Site's response actions."

The TSWDA definition of "release" is almost identical to that of CERCLA. *Compare* TEX. HEALTH & SAFETY CODE ANN. § 361.003(28) *with* 42 U.S.C. § 9601(22). The distinctions are without a difference in this case as is evident by the following: (a) both the EPA and TCEQ have determined that there has determined there has been a release or threatened release as defined by CERCLA, and the TSWDA. *See* [Finding of Facts Dkt. No. 1429]; and (b) the EP and the TCEQ have determined that the USOR Site PRP Group's

response activities are necessary to address the release or threatened release. *See Id.* Like the EPA determinations on this subject, the TCEQ determinations warrant deference by this Court.

It follows that if the USOR's response costs were incurred in response to a release, and the costs were necessary to address the release, then the costs were "reasonable and necessary" under § 361.344. Therefore, the EPA and TCEQ's approval of the USOR's response activities and determinations that the USOR's response activities are necessary, are also an affirmation that the USOR's costs are reasonable and necessary. Further, any dispute concerning the USOR's costs, as to reasonableness, is a question for the Court to determine in apportioning response costs among liable parties. *See* TEX. HEALTH & SAFETY CODE ANN. § 361.344. *See also,* TEX. HEALTH & SAFETY CODE ANN. § 361.343(c) (noting apportionment of costs only affects rights of parties to cost recovery actions as against each other and does not affect liability).

Like CERCLA, the TSWDA defines "persons responsible for solid waste" to include a person that:

> (3) by contract, agreement, or otherwise, arranged to process, store, or dispose of, or arranged with a transporter for transport to process, store, or dispose of, solid waste owned or possessed by the person, by any other person or entity at:
>
> (A) the solid waste facility owned or operated by another person or entity that contains the solid waste; or
>
> (B) the site to which the solid waste was transported that contains the solid waste .
>
> . . .

TEX. HEALTH & SAFETY CODE ANN § 361.271(a)(3). Thus, the Court need not repeat the standard of proof simply because state law is involved. It is sufficient to say, based

on the record before the Court, that a finding under CERCLA concerning "person,"[8] "arranger" or "transporter' of "solid waste" by EPA at the USOR Site, satisfies a necessary finding under the TSWDA.

Regarding "processing, storage or disposal," the TSWDA defines "processing," in relevant part, as "the extraction of materials from or the transfer, volume reduction, conversion to energy, or other separation and preparation of solid waste for reuse or disposal . . . ." TEX. HEALTH & SAFETY CODE ANN. § 361.003(25). "Storage" is defined as "the temporary holding of solid waste, after which the solid waste is processed, disposed of, or stored elsewhere." *Id*. § 361.003(38). "Disposal" is defined broadly, to mean "discharging, depositing, injecting, dumping, spilling, leaking, or placing of solid waste or hazardous waste . . . into or on land or water . . . ." *Id*. § 361.003(7). And,, "solid waste" is defined in relevant part as:

> garbage, rubbish, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility, and other discarded material, including solid, liquid semisolid, or contained gaseous material resulting from industrial, municipal, commercial, mining, and agricultural operations and from community and institutional activities. The term:
>
> (A) does not include:
> (i) solid or dissolved material in domestic sewage ... (B) does include hazardous substances . . . .

*Id*. § 361.003(34) and (35). As noted the definition of "solid waste" specifically includes, but is not limited to, hazardous substances. *See Id. see also* TEX. HEALTH & SAFETY CODE ANN. § 361.003(34) and (35); and *Zumwalt v. City of San Antonio*, No. 03-11-00301-CV,

---

[8] Under Texas law a "person" is defined as "an individual, corporation, organization, government or governmental subdivision or agency, business trust, partnership, association, or any other legal entity." TEX. HEALTH & SAFETY CODE ANN. § 361.003(23).

2012 WL 1810962, at •6 (Tex. App. May 17, 2012). Consequently, the Court concludes that the TSWDA imposes the same or broader liability upon "persons responsible for the disposal of solid waste" as CERCLA upon "covered persons."

## VI.   CONTENTIONS OF THE PARTIES

### A.    *The USOR's Contentions and Evidence Proffer*

The USOR seeks partial summary judgment against the City under CERCLA and the TSWDA.   The Court has reviewed USOR's motion, contentions and supporting evidence and determines its proffer of evidence to be as follows [9]:

> City of Pasadena is a municipality, and as a municipality, is a government or governmental subdivision or agency, and a legal entity. *See* City of Pasadena's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 1730, at 9, ¶ 4) (admitting City of Pasadena is a municipality and that municipality falls within CERCLA's definition of "person").

> City of Pasadena owned the 200 N. Richey portion of the USOR Site during the approximately 65-year period from 1944 to January 2009, when it was acquired by U.S. Oil Recovery, which abandoned the USOR Site in June 2010.   *See* City of Pasadena's EPA Information Request Response at 1-2 (Dkt. No. 1431-2, at 1-2); Removal Action AOC, Finding of Fact 9.a., at p. 4 (Dkt. No. 1428-1, at 4); AOI-1 RI/FS AOC, Finding of Fact 14, at p. 6 (Dkt. No. 1429-2, at 6); Second Removal Action AOC, Finding of Fact 11, p.5 (Dkt. No. 3187-1, at 5).

> City of Pasadena operated a wastewater treatment plant commonly known as "Old Vince" at the 200 N. Richey portion of the USOR Site during the approximately 50-year period from 1944 until March 1994. *See* City of Pasadena's EPA Information Request Response at 2-3 (Dkt. No. 1431-2, at 2–3).

> From March 1, 1994 through April 7, 2004, City of Pasadena still owned the 200 N. Richey portion of the USOR Site but contracted with its agent, Defendant Severn Trent Services, Inc., to operate Old Vince. *See* City of Pasadena's EPA Information Request Response at 2-3 (Dkt. No. 1431-2, at 2–3).

---

[9] USOR has attached to its motion for partial summary judgment Exhibits A through I in support of its proffer as referenced.  This Memorandum relies on those documents.

Defendant Severn Trent Services operated Old Vince under the direction and control of City of Pasadena pursuant to contract and City of Pasadena ordinance. *See* PASADENA, TEX., ORDINANCES 94-32, *amended by* 2015-120.

Old Vince comprised land, structures, appurtenances, and other improvements at the 200 N. Richey portion of the USOR Site, including but not limited to two clarifiers, two oxygen digesters, an oxygen activation sludge unit, an oxygen plant, a chlorination building, a lift station, a gravity thickener, an aerobic digester, a belt filter press building, a pump control room, a chlorine contact tank (basin/concrete containment area), a high-rate trickling filter, primary clarifier, final clarifier, and two lift stations. *See* Removal Action AOC, Findings of Fact "e." at p.5 (Dkt. No. 1429-1, at 5).

Old Vince accepted wastewater from residential sources, but also accepted wastewater from commercial and industrial sources, including machine shops, fabrication shops grocery stores and other "businesses operating in the City of Pasadena." *See* City of Pasadena's February 20, 2014 Letter to EPA at 2 & n.2, 5 (Dkt. No. 1431-3, at 2 & n.2, 5).

Hazardous substances were used in the course of treating domestic wastewater during the City of Pasadena's ownership of the 200 N. Richey portion of the USOR Site and during the operations of Old Vince by the City of Pasadena and Severn Trent Services. *See* City of Pasadena's EPA Information Request Response at 6, 11–12 (Dkt. No. 1431-2, at 6, 11–12) (admitting that, "[i]n the course of treating normal domestic wastewater hazardous substances . . . were used."); City of Pasadena's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment Against (Dkt. No. 1730, at 10, ¶ 11) (admitting use of at least the hazardous substance chlorine).

Wastewater was spilled and/or released at various times from Old Vince and the 200 N. Richey portion of the USOR Site between 1944 and 2004 when the City of Pasadena owned the 200 N. Richey portion of the USOR Site and from 1944 to 1994 when the City of Pasadena operated Old Vince. *See* City of Pasadena's EPA Information Request Response at 10, 12–13 (Dkt. No. 1431-2, at 10, 12–13) (admitting "[t]here may have been an occasional spill or release of domestic wastewater at the Old Vince. That wastewater would have contained normal background concentration contaminants, which may have included pollutants and/or contaminants."); *id.*, at 3 (Dkt. No. 1431-2, at 3) (admitting

that during high rainfall, because of the naturally high water table, "hydraulic overload would result in wastewater spills from the Old Vince" and further admitting to "raw sewage spills or the release of sewer water" due to "sewer stoppages, line breaks, power outages and five spills of insignificant volumes . . . during mechanical malfunctions."); Plaintiff's Letter to City of Pasadena of April 25, 2013 with Selected Attachments (Exhibit A hereto), May 22, 2009 Harris County Public Health & Environmental Services Investigative Report, at 3, stating:

> According to City of Pasadena Engineer, D. Dayananda, the plant was sold as-is. He stated that Pasadena did not conduct a property assessment before the sale. He stated that he personally notified the President of USOR, Klaus Genssler, that . . . there were problems with the clarifier on the west side of the plant that consisted of a leak to Vince Bayou and that when the water level in Vince Bayou got high, it flooded into the clarifier"; *See Id.*, January 29, 2009 Deed Without Warranty relating to 200 N. Richey, Pasadena, TX, at 2,

¶ 5, which states:

> Grantee acknowledges that the Property described herein may have been used in connection with municipal sewage treatment operations, including the storage, transfer and disposal of raw municipal sewage and that such sewage products, or derivatives may have been spilled, leaked, or otherwise discharged onto or in the Property. Equipment and sites may contain asbestos, hazardous substances, or Naturally Occurring Radioactive Material ("NORM"); and NORM-containing material and other waste or hazardous substances may be buried, have come into contact with the soil, or otherwise have been disposed of on the Property. Grantee understands that special procedures may be required for the remediation, removal, transportation, or disposal of the wastes, asbestos, hazardous substances, and NORM from the equipment and Property . . . .;

*See also* FEMA Flood Maps for 200 N. Richey (Exhibit A.1 hereto) (demonstrating 200 N. Richey portion of USOR Site is within floodplain).

City of Pasadena acknowledges that any wastewater which was spilled and/or released from Old Vince operations from 1944 to 2004 would have contained the heavy metals copper, lead and zinc, among other CERCLA hazardous substances. *See* City of Pasadena February 20, 2014 Letter to EPA, at 2 (Dkt. No. 1431-3, at 2) (admitting wastewater and sludge samples from Old Vince contained CERCLA hazardous substances and heavy metals in "trace" amounts, and that, "contained within any wastewater spill were 'normal background concentration contaminants, which may have included pollutants and/or contaminants.'"); *see also* 40 CFR 302.4 – Designation of hazardous substances (Dkt. No. 1431-4); ."); Plaintiff's Letter to City of Pasadena of April 25, 2013 with Selected Attachments (Exh. A) (January 29, 2009 Deed Without Warranty relating to 200 N. Richey, Pasadena, TX, at 2, ¶ 5, acknowledging there may have been spills, leaks or discharges from 200 N. Richey, and that the property "may contain . . . hazardous substances.")

Between April 2002 and July 2003, at a time period when City of Pasadena owned the 200 N. Richey portion of the USOR Site, there were several exceedences of hazardous substances such as ammonia (NH3) and chlorine in the effluent discharged and/or released from the Old Vince operations in violation of City of Pasadena's wastewater discharge permit. *See* City of Pasadena's EPA Information Request Response, at 8-10 (Dkt. No. 1431-2, at 8–10) (admitting same); City of Pasadena's Response in Opposition to Plaintiffs Motion for Partial Summary Judgment, at 11, ¶ 14 (Dkt. No. 1730, at 11, ¶ 14) (admitting same); TCEQ Agreed Order, Docket No. 2003-1017-MWD-E, effective May 11, 2005 ("TCEQ Agreed Order") (Dkt. No. 1431-5); Declaration of Gregory W. Jalowy (Dkt. No. 1730-1); *see also* 40 CFR 302.4 – Designation of Hazardous Substances (Dkt. No. 1431-5).

As part of its NPDES permitting process, City of Pasadena collected effluent samples of municipal wastewater treated at Old Vince, which contained the following hazardous substances during the following years: 1990 – copper, nickel, phenols, toluene and zinc; 1997 – aluminum, barium, zinc; 2001 - aluminum, barium, chloroform, 1,4-dichlorobenzene, phenols and zinc. *See* 1990, 1997 and 2001 City of Pasadena Effluent Samples (Dkt. No. 1431-6); *see also* 40 CFR 302.4 – Designation of Hazardous Substances (Dkt. No. 1431-4); City of Pasadena's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment Against (Dkt. No. 1730, at 11, ¶ 15) (admitting effluent

samples in 1990, 1997 and 2001 contained some or all of these substances).

From 1944 until at least 1983 when a sludge thickener and belt presses were installed at Old Vince, sludges that were generated by Old Vince operations were managed in two drying beds, one located to the west of the Eastern portion of Old Vince, and one located to the north of the Western portion of Old Vince ("north of the Headworks"). *See* City of Pasadena's EPA Information Request Response, at 6–7 (Dkt. No. 1431-2, at 6–7); Historical Map of Old Vince Drying Bed Locations (Dkt. No. 1431-7) (rectangular grids indicate sludge drying beds); October 12, 2015 Site Visit Memorandum, at 4 and Attached Maps (Dkt. No. 1883-1, at 4, 6–7); City of Pasadena Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, at 11, ¶ 16 (Dkt. No. 1730, at 11, ¶ 16) (admitting two sludge drying beds but disputing exact location).

Portions of each sludge drying bed were located within the USOR Site as defined by EPA. *Compare* EPA maps of USOR Site (Dkt. No. 1429-1, at 52-56) *with* Historical Map of Old Vince Drying Bed Locations (Dkt. No. 1431-7) *and* maps attached to October 12, 2015 Site Visit Memorandum (Dkt. No. 1883-1, at 6-7).

The sludge drying bed "north of the Headworks" was constructed of concrete and gravelly sand. *See* October 12, 2015 Site Visit Memorandum (Dkt. No. 1883-1, at 4).

City of Pasadena's Sludge Data Reports from 1996, 1998 and 2000 demonstrate sludges generated by Old Vince operations contained at least the following hazardous substances: 1996 – barium, benzene, chromium, copper, cyanide, lead, nickel, phenols and zinc; 1998 – lindane (gamma-BHC) #2 and methyl ethyl ketone; 2000 – barium and selenium. *See* 1996, 1998 and 2000 City of Pasadena Sludge Data Reports (Dkt. No. 1431-8); *see also* 40 CFR 302.4 – Designation of Hazardous Substances (Dkt. No. 1431-4); City of Pasadena's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment Against (Dkt. No. 1730, at 11, ¶ 17) (admitting these sludge samples contained some or all of these substances).

During decommissioning of Old Vince in 2004, all tanks and basins were drained and additional rainfall accumulation was pumped out to a nearby lift station, but significant solids which could not be pumped were not removed. *See* City of Pasadena's EPA Information Request Response (Dkt. No. 1431-2, at 14)

(EPA request about "substance remaining in the tanks at the 200 N. Richey property" and City of Pasadena's response thereto); October 12, 2015 Site Visit Memorandum (Dkt. No. 1883-1, at 4); *see also* Exh. A, Plaintiff's Letter to City of Pasadena of April 25, 2013 with Selected Attachments, May 22, 2009 Harris County Public Health & Environmental Services Investigative Report, at 4, stating

> At the time this investigation began . . . . it was also clear that tanks, pipes, valves, and structures had not been cleaned, cleared, or properly maintained before the plant was put into use by MCC. This was evident in the fact that the chlorine contact chamber contained approximately 40 cubic yards of sludge, the sand filters had plant growth in them, similar plant debris was floating on the contents of the clarifiers and aeration basins on the east side, there was trash, litter, and plant debris in the raceways connecting the tanks, plant debris and litter was obstructing at least one gate valve preventing it from seating and causing leakage on the east side. A gate valve was completely missing on the west side between the clarifier and Vince Bayou. Severe rust on metal apparatus was endemic . . . ."

EPA sent City of Pasadena a March 12, 2013 general notice letter notifying City of Pasadena of its potential CERCLA liability at the USOR Site and EPA and Plaintiff's ongoing removal action activities; requesting that City of Pasadena negotiate in good faith a settlement agreement with EPA to perform a Remedial Investigation and Feasibility Study ("RI/FS") at the USOR Site; and requesting that City of Pasadena provide information and documents to EPA pursuant to CERCLA Section 104(e). *See* March 12, 2013 EPA General Notice Letter with 104(e) Information Request to City of Pasadena (Dkt. No. 1431-1).

Plaintiff met with City of Pasadena on March 20, 2013 to discuss City of Pasadena's liability and participation with in the cleanup of the USOR Site, and Plaintiff's representative emailed City of Pasadena shortly thereafter, on March 22, 2013, to request assistance from the City of Pasadena and its agents in understanding the operations of Old Vince. *See* Pastor Email to City of Pasadena of March 22, 2013 (Exhibit B hereto); *see also* Plaintiff's Letter to City of Pasadena of April 25, 2013 with

Selected Attachments (Exh. A) (referencing March 20, 2013 meeting).

By letter dated April 25, 2013, Plaintiff's representatives mailed counsel for City of Pasadena evidence of City of Pasadena's liability at the USOR Site. *See* Exh. A.

City of Pasadena responded to EPA's 104(e) Information Request by letter dated June 14, 2013 from Robin Green, P.E., Public Works Director for City of Pasadena. *See* City of Pasadena's EPA Information Request Response at 2-3 (Dkt. No. 1431-2, at 2-3).

Defendant Severn Trent Services representatives, Mr. Richard Neely and Mr. Greg Jalowy, participated in the preparation of City of Pasadena's Information Request Response. *See* City of Pasadena's EPA Information Request Response at 2-3 (Dkt. No. 1431-2, at 2-3).

City of Pasadena employed Mr. Jalowy from 1982 to 1994 during City of Pasadena's ownership and operation of Old Vince, and Defendant Severn Trent Services has employed Mr. Jalowy since 1994, when Defendant Severn Trent Services began operating Old Vince under contract with City of Pasadena. *See* Declaration of Gregory W. Jalowy (Dkt. No. 1730-1).

On September 25, 2013, Plaintiff 's representatives met with EPA to discuss City of Pasadena's liability at the USOR Site, identifying various spills and overflows and hazardous substances present in wastewater effluent and sludges. *See* Plaintiff's Presentation to EPA of September 25, 2013 (Exhibit C hereto).

By email October 29, 2013, Plaintiff's representatives re-alerted EPA to the results of EPA's own field sampling conducted in July 2010 at Old Vince which and identified numerous CERCLA hazardous substances present at the 200 N. Richey portion of the USOR Site. *See* Plaintiff's Email to EPA Regarding 2010 MCC Sampling of October 29, 2013 (Exhibit D hereto).

By letter dated December 26, 2013, Plaintiff alerted City of Pasadena of deficiencies and inaccuracies in the City of Pasadena's June 14, 2013 Information Request Response, by reference to various public records and other evidence. *See* Plaintiff's Deficiency Notice Letter to City of Pasadena of December 26, 2013 (Exhibit E hereto).

Instead of supplementing its June 14, 2013 Information Request Response, City of Pasadena sent a letter to EPA dated February 20, 2014 addressing Plaintiff's December 26, 2013 letter to City of Pasadena. *See* City of Pasadena's February 20, 2014 Letter to EPA (Dkt. No. 1431-3).

By letter dated April 18, 2014, Plaintiff notified EPA of the inadequacy of City of Pasadena's 104(e) Information Request Response and February 20, 2014 letter. *See* Plaintiff's Deficiency Notice Letter to EPA of April 18, 2014 Regarding City's 104(e) Response (Exhibit F hereto).

In Summer 2014, the USOR Site PRP Group conducted sediment core sampling of substances remaining in the tanks of Old Vince, including over four feet of sludge in the aerobic digester and three feet of sludge in the oxygen digesters. Sampling identified the following hazardous substances: aluminum, arsenic, barium, cadmium, chromium, copper, lead, nickel, selenium, silver and zinc. *See* July 22, 2014 Report entitled "Old Vince Bayou Wastewater Treatment Plant Residual Materials Sampling" (Dkt. Nos. 1432–1440, especially Dkt. No. 1432 at 9, 121); *see also* 40 CFR 302.4 – Designation of Hazardous Substances (Dkt. No. 1431-4).

On July 2, 2014, while the July 22, 2014 Report was pending, Plaintiff's representatives met with EPA again to discuss the results of the Residual Materials Sampling. *See* Plaintiff's Presentation to EPA of July 2, 2014 (Exhibit G hereto).

In May 2015, in response to significant rainfall events, Plaintiff's consultants studied overflows at Lift Station 1 at Old Vince and identified among overflow material waste left in place from historical wastewater treatment operations, including, *inter alia*, rotting organic matter and tampon applicators. *See* Golder Lift Station 1 Overflow Report of May 22, 2015 (Exhibit H hereto).

In late May and/or June 2015, Plaintiff and EPA sought assistance from City of Pasadena and Defendant Severn Trent Services to deal with significant rainfall events and ensuing overflows from the former wastewater treatment units at Old Vince. Specifically, Plaintiff and EPA requested the assistance of City of Pasadena and Severn Trent to show Plaintiff and EPA representatives which valves could be triggered or what other means could be used to close off historical Old Vince hydraulic connections to minimize the actual and threatened overflows from the 200 N. Richey Street portion of the USOR Site as a result of the significant rain events

and flooding. *See* Pastor Aff. at 2, ¶¶ 4–8 (Dkt. No. 2007-2, at 2, ¶¶ 4–8); EPA's Third 104(e) Information Request to Severn Trent, at 1 and Enclosure 3 (Dkt. No. 2007-3, at 1, 10).

On August 17, 2015, EPA issued a CERCLA Section 104(e) Information Request to Defendant Severn Trent Services, wherein EPA requested "to have a technical representative meet EPA at [Old Vince] to visually show the locations indicated by the City . . ." of various valves and Old Vince apparatus." *See* EPA's Third 104(e) Information Request to Severn Trent, at 1 and Enclosure 3 (Dkt. No. 2007-3, at 1, 10). Defendant Severn Trent Services selected Mr. Greg Jalowy as its technical representative. *See* Severn Trent's Third 104(e) Response of September 18, 2015, at 2 (Exhibit I hereto).

On September 29, 2015, in response to EPA's Third 104(e) Information Request, Mr. Jalowy and other Severn Trent Services representatives participated in a two-hour site visit at Old Vince led by EPA's On-Scene Coordinator, Mr. Adam Adams ("Site Visit"). Plaintiff also participated in the Site Visit through its engineering and environmental consultants, including Mr. Eric Pastor, Pastor, Behring & Wheeler, LLC. Mr. Pastor drafted a memorandum summarizing the Site Visit subject to the review and approval of Mr. Adams, which memorandum was complete on October 12, 2015. *See* Pastor Aff. and Exhibits thereto (Dkt. Nos. 2007-1, 2007-2 and 2007-3); October 12, 2015 Site Visit Memorandum (Dkt. No. 1883-1).

As the September 29, 2015 Site Visit was responsive to EPA's Third 104(e) Information Request, any statements made by representatives of Defendant Severn Trent Services, including Mr. Jalowy, were made subject to criminal penalty. *See* EPA 104(e) Information Request to Severn Trent, at 1 (Dkt. No. 2007-3, at 1).

Based on these asserted facts; investigations and findings, USOR contends that the evidence is undisputed that: (a) City is a "person" within the CERCLA definition; (b) the USOR Site is a "facility as defined in § 101(9) of CRECLA; (c) the City operated a wastewater treatment facility on part of the USOR Site at the time that hazardous substances were disposed of in effluents, sludges and wastewater spills; (d) there has been a "release" or threatened "release" at the USOR Site, as defined by § 9601(22); and (e) USOR has incurred response

costs; (f) the TCEQ has acknowledged approval of actions under TCEQ. Therefore, USOR asserts that it is undisputed that USOR is entitled to judgment as a matter of law under the TSWDA on liability and permitted to seek allocation of the City in response costs.

### B. The City of Pasadena's Contentions

The City contends that its wastewater treatment prior to the sale of its treatment plant did not involve hazardous substances and, therefore, does not create a basis for liability under CERCLA and TSWDA. The City asserts that any contamination for which response costs may be claimed "arose as a result of USOR's operations after the City sold Old Vince to USOR." The City cites to *Joslyn Mfg. Co. v. Koppers Co., Inc.,* 40 F.3d 750, 760 (5th Cir. 1994) as authority for its position that there is no liability on its part.

The City also asserts in general, without evidence of equal dignity, that it "disputes" certain evidence provided by USOR in support of its motion for partial summary judgment. In this regard, the City argues that certain documentation is "unauthenticated as required under FRE 901. The City goes further and disputes USOR proffers that are irrelevant to its defense. For example, the City disputes whether USOR consists of "persons", whether USOR has been required to pay response costs consistent with the National Contingency Plan ("NCP") and whether response costs are necessary to address "the release or threatened release of hazardous substances. At the same time, the City admits that these "disputed" matters do not raise questions of fact, but instead questions of law. The City has filed a cross-motion for summary judgment that rests on matters that it contends are disputed fact. The Court takes the City's position to be that because USOR cannot establish its motion, as a consequence, the City is entitled to summary judgment on the same claims.

**VII.   DISCUSSION AND ANALYSIS**

The mere fact that the City alleges the existence of "some" factual dispute between the parties and that casual and stray disputes exist, will not defeat an otherwise properly supported motion for summary judgment.  *Corsair v. Stapp Towing Co., Inc.,* 228 F. Supp. 2d 795, 797 (S.D. Tex. 2002).  Disputes are genuine only if they require resolution by a fact finder.  *Anderson v. Liberty Lobby, Inc.,* 488 U.S. at 248, 250.   Genuine facts that the City contends are disputed, are, in fact, admitted by the City in the record.   For example, the City admits that it used hazardous substances in its wastewater treatment process.   It admits to the presence of hazardous substances and discharges of sludge and effluents.   And, it admits that various spills, leaks, releases and/or overflows from its treatment plant occurred.   The proof is found in the fact that the City accepted wastewater from commercial and industrial sites, including machine shops, fabrication shops, grocery stores and other commercial venues.  *See* [DE# 1431-3, at 2 and no. 2, 5].

The City cannot refute that during flooding and high water "there may have been an occasional spill."   In its deed of sale to USOR, the City acknowledged that spills occurred and that its equipment "may contain . . . hazardous substances".   Hence, these admissions establish that the City's wastewater and sludge samples contained CERCLA hazardous substances and heavy metals.   Looking further, in response to EPA requests, the City admitted that there were several instances where it effluent discharge exceeded EPA standards in violation of its discharge permit.   These effluents contained hazardous substances such as copper, nickel, phenols, toluene and zinc, aluminum, barium, chloroform, and 1, 4 dichlorobenzene.   Finally, the evidence is undisputed that sludge remains in two drying beds located at the Old Vince site and are within the USOR Site.   Furthermore, the City reported the presence of like or similar

hazardous substances that were not pumped out or otherwise removed at the time of the sale of its plant.

From the undisputed facts and City admissions, the Court concludes that the City is a "person" as defined by CERCLA, that solid and hazardous waste, as defined by CERCLA and RCRA are deposited at Old Vince for treatment, that it is necessary for the USOR Site to address a release or threatened release, that the costs associated have been determined to be reasonable and necessary, that the City has been properly notified and that the City is a responsible person under CERCLA and the TSWDA. *See* [DE# 3890 Incorporated Here].

Lastly, the City argues that because it did not own or operate its plant at the relevant time that *Joslyn* absolves it of liability. *See Joslyn Mfg. Co.,* 40 F.3d at 760. The City misread the *Joslyn* opinion when it contends that it was not the owner at the time of any release and/or that it is simply a prior owner. A past owner may be liable for operating a contaminated site even though that status alone may not be the basis for liability. *See Id.* at 761-62. The question of liability, however, turns on whether use during ownership gives rise to liability. *Id.* As a matter of law, because the facts are undisputed, *Joslyn* does not absolve the City of liability.

**VIII. CONCLUSION**

Therefore, the Court HOLDS that the City's use during ownership gives rise to liability under CERCL and the TSWDA.

Based on the foregoing discussion and conclusions of law, USOR's motion for partial summary judgment is GRANTED and concomitantly, the City's motion for summary judgment is Denied.

It is so Ordered.

SIGNED on this 2nd day of August, 2017.

Kenneth M. Hoyt
United States District Judge